Charles W. SNOW, Petitioner,

v.

KINTA STRIPPING COMPANY, United States Fidelity and Guaranty Company and the State Industrial Court, Respondents.

No. 39926.

Supreme Court of Oklahoma.

May 2, 1962.

Rehearing Denied June 5, 1962.

Gene Stipe, Geo. L. Hill, McAlester, for petitioner.

Fenton, Fenton, Smith & McCaleb, Oklahoma City, Mac Q. Williamson, Atty. Gen., for respondents.

IRWIN, Justice.

Charles W. Snow, hereinafter called claimant, filed his first notice of injury and claim for compensation stating that on September 28, 1960, while employed by Kinta Stripping Company, employer, he sustained an accidental injury to his left eye resulting in the loss thereof.

This proceeding is brought by claimant against the employer and its insurance carrier, United States Fidelity and Guaranty Company, hereinafter called respondents to review the order denying an award for permanent partial disability.

The order appealed from, inter alia, provides:

"That claimant sustained an accidental personal injury, arising out of and in the course of his hazardous employment with the above named respondent, within the terms and meaning of the Workmen's Compensation Law, on September 28, 1960, consisting of injury to his left eye.

"That at the time of said injury, claimant's wages were sufficient to fix his rate of compensation at $35.00 per week for temporary total disability and $30.00 per week for permanent partial disability; that as a result of said injury, claimant was temporarily totally disabled at various times for which he has been paid for 12 weeks and provided medical treatment. That the loss of claimant's left eye was a result of a tumor process, that was neither caused by or aggravated by the injury of Sept. 28, 1960, therefore claimant's claim for permanent partial disability is hereby denied."

The record discloses that on September 28, 1960, claimant was a driller helper and drilling for coal when struck in the eye by a foreign substance. At the time of the accident his eye bled and a fellow employee cleaned his eye and removed a small steel sliver from claimant's face just below the eye. He was paid temporary disability and consulted several physicians for examination and treatment and on or about March 27, 1961, claimant's eye was removed. Medical testimony submitted in behalf of claimant was sufficient to sustain the finding of the trial tribunal that claimant sustained an accidental personal injury, arising out of and in the course of his employment. This testimony was that of the doctor who removed claimant's eye.

Dr. S. submitted a report in behalf of the respondents which formed the basis of the denial of an award. Dr. S. had examined and treated claimant prior to the operation for the removal of the eye. The report of Dr. S. is as follows:

"I first saw Charles Snow on October 4, 1960, and at that time he gave a history of having had sudden blurring of vision and a burning sensation in his left eye while on his job September 28, 1960. The blurring of vision had persisted up to the time of his first examination. He was found to have normal central vision in each eye but had a marked loss of peripheral visual field laterally in the left eye. Intraocular tension was normal. Through a dilated pupil, the nasal portion of the retina was markedly elevated with several hemorrhagic areas present on its surface.

"The question arose as to whether this was a subretinal hemorrhage or possibly a tumor with secondary hemorrhage. He was next examined one week later and it was my impression that the lesion was beginning to resemble a tumor more and more since the hemorrhages were absorbing. Since it requires a great deal of fortitude to advise removal of an eye in which there is normal central vision, we, as ophthalmologists, invariable require consultation with one or more doctors for reassurance on the part of the patient. Consequently, I had Dr. C in Oklahoma City see him, and he in turn had Dr. T examine the lesion. It was their impression also that we were dealing with a tumor but we all felt we should observe it for a slightly longer period before deciding to enucleate the eye.

"I last saw him on November 9 and he had had some further hemorrhaging at that time and the lesion was possibly a little larger than previously. Dr. C had also requested to examine the lesion on one more occasion and he was to see him about November 16. If we continue to feel that this is a tumor, we will advise enucleation of the eye in the near future.

"Although the first hemorrhage occurred while the man was on the job, we, of course, know that the tumor itself is not the result of his occupation if that is the final diagnosis."

An analysis of the above report discloses that Dr. S. did not consider that the injury to the eye may have been a result of an accidental injury; nor does the report indicate that claimant may have suffered any injury. The report is predicated on a diagnosis that claimant's disability was

due to a tumor. It is also noted that the last time Dr. S. examined claimant was on November 9, 1960, approximately four and one-half months prior to the time that the eye was removed.

 From the evidence submitted and the stipulation of the respondent that "I will stipulate that this man had a hemorrhage "occurrent" to his eye on the job; and the trial tribunal's finding that claimant "sustained an accidental personal injury, arising out of and in the course of his hazardous employment", we can only conclude that the order denying the award must be vacated.

In Standard Roofing & Material Company v. Ross, Okl., 279 P.2d 947, we held:

"Where an accidental personal injury, arising out of and in the course of employment and within the terms of the Workmen's Compensation Law, aggravates and lights up a pre-existing physical condition, the injured employee is, nevertheless, entitled to compensation therefor. Patrick & Tillman Drilling Co. v. Gentry, 156 Okl. 142, 9 P.2d 921."

We have also said that where it is necessary to establish disability by medical testimony, the physician's opinion must be predicated upon a set of facts substantially in the nature disclosed by the evidence on the hearing. See Western Good Roads Service Co. v. Coombes, 185 Okl. 599, 95 P.2d 633; and Acme Flour Mills v. Bray, 185 Okl. 516, 94 P.2d 828.

If expert testimony must be based on a set of facts substantially in the nature disclosed by the evidence to establish disability; then by the same token, expert testimony by which is sought to establish that claimant's disability is not a result of an accidental injury must also be based on a set of facts substantially in the nature disclosed by the evidence, where the trial tribunal denies an award based upon such testimony and also finds that claimant sustained an accidental injury.

There is substantial evidence that claimant suffered an accidental injury and the trial tribunal so found, but the medical testimony upon which the claim was denied did not allude to nor even consider the accidental injury. Therefore, such testimony was not based on a set of facts substantially in the nature disclosed by the evidence.

The order denying the award is vacated with directions and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and DAVISON, HALLEY and JOHNSON, JJ., concur.

BERRY, J., dissents.