Archie B. HILL, Petitioner,

v.

The WESTERN COMPANY OF NORTH AMERICA, and Fireman's Fund Insurance Company and/or Travelers Insurance Company, and The State Industrial Court, Respondents.

No. 41403.

Supreme Court of Oklahoma.

Jan. 31, 1967.

Schwoerke & Schwoerke, by C. W. Schwoerke, Oklahoma City, for petitioner.

Looney, Watts, Looney, Nichols & Johnson, Charles R. Nesbitt, Atty. Gen., Oklahoma City, for respondents.

WILLIAMS, Justice.

This is an original proceeding by Archie B. Hill, claimant, to review an order of the State Industrial Court denying his claim for compensation against The Western Company of North America, employer, and its insurance carrier, Fireman's Fund Insurance Company.

The evidence in this case shows that the claimant worked for The Western Company of North America from some time prior to 1958 until September, 1962. The claimant, in his claims for compensation, alleged injuries to his back in 1958, 1960 and 1962. In this proceeding, the claimant abandons all claims for compensation, except for the alleged injury in 1962.

The pertinent part of the trial judge's order is as follows:

"That claimant did not receive an accidental personal injury in February, 1962, as alleged in his Form 3; therefore Claimant's claim for compensation by reason of an alleged injury in February of 1962 is hereby denied."

The order was appealed to the State Industrial Court en banc where it was adopted and affirmed.

The claimant has a history of back trouble commencing in 1958 when he injured his back while driving a truck over rough roads. The alleged injury for which he now seeks compensation occurred February 7, 1962. Claimant's employer was an oil well service company for whom claimant kept a company telephone in his home to receive business calls for those who needed his company's services. On the morning in question, the claimant was at home sitting in a chair drinking coffee. The company telephone rang and the claimant rose from his chair and took two steps when pain struck him across his back and down his legs. That same day, the claimant was sent by the employer to see Dr. H who placed him in traction and sent him to Oklahoma City in an ambulance to see Dr. M.

Dr. M initially diagnosed claimant as having an acute strain, but on further examination, this diagnosis was changed to rheumatoid spondylitis. Dr. M treated the claimant and released him in March, 1962, to do light work.

The claimant continued to have constant pain in his back and returned to Dr. H who, on May 15, 1962, again referred him to Dr. M. At this time, Dr. M diagnosed the claimant as having a herniated disc. This diagnosis was confirmed by surgery and the herniated disc was removed.

Thereafter claimant filed separate claims on September 18, 1962, alleging in the first his injury in April, 1958, while working at Borger, Texas, (at which time Travelers Insurance Company was employer's insurance carrier) and in the second claiming an alleged injury of February 7, 1962 (at which time Fireman's Fund Insurance Company was the employer's carrier).

At the trial participated in by claimant, employer and both insurance carriers, claimant adduced testimony tending to show that he had residual effects from the 1958 injury up to and including the latter part of 1961, and the early part of 1962. He testified, in part, as follows:

[Following witness' injury in 1960]—

"A: (Interrupting) When I went to see Harrison in '60 there had been several little things similar to that, that just kept—ever time that I would move or get cold or be out on some of those thirty-six-hour jobs I would get to where I couldn't hardly move. My legs would get to hurting and I would just—during all of this time when I would pull on the location to do a job the first thing that I would do was try to find a place to sit down and direct it from there.

"Q: Then in 1962 you hurt your back again, did you not?

"A: Well, I wouldn't—I don't know whether I hurt it again. I think it brought the same injury up again, because I never—it seemed to me through all of that time it would be the same thing because I never had been bothered with my back before.

"Q: What happened there in 1962, and when did it happen?

"A: It happened?

"Q: To cause you to have more trouble to your back?

"A: It happened in February, about the 7th or 8th, I just got up out of the chair to answer the telephone."

\*　　\*　　\*　　\*　　\*　　\*

"Q: Is it a fact that during the latter part of 1961 and the early part of 1962 that your wife complained to you that you were dragging your leg? .

"A: Yes.

"Q: And it seemed to be getting worse?

"A: Uh-huh.

"Q: Now, when did that condition start, that you started dragging your leg to walk?

"A: I don't mean like dragging a chain, but to get the exact date it would be hard, but it seems like in the fall when it started getting cold.

"Q: Uh-huh.

"A: In '61."

\*　　\*　　\*　　\*　　\*　　\*

[In answer to a question as to the condition of claimant's back and health from 1958 on up until the time he was "operated on"]—

"A: Slow and draggy. I lost my ambition. I hurt every time I moved. I would start to do something and it seemed like the longer I did it the slower I got. I just couldn't seem to get going. It was every time I was doing something it just hurt a little bit more, and in warm weather I would feel good, my condition would sort of clear good. I would start working and pretty soon through exertion my legs would start aching."

The trial judge and the Industrial Court en banc on appeal in the order, determined that the statute of limitation had run as against claimant's right to any recovery based upon his alleged injury in 1958. In brief filed in this Court, as has been indicated hereinabove, claimant declares upon the 1962 injury alone.

His medical evidence, however, as in the case of his own personal testimony, is of an inconclusive character and appears to fall short of clearly substantiating his position.

In his letter-report of November 7, 1962, Dr. H stated that through the period next following a visit to Dr. H on December 31, 1960, and until about the 1st of April, 1962, claimant continued to work "with intermittent difficulty with his back which became acutely and markedly worse." In Dr. H's letter-report of March 10, 1964, the doctor stated that it was his "opinion that Mr. Hill definitely herniated his disc between February 6, 1962, and May, 1962. Although he may have had a weakened disc prior to this time, his symptoms were never well developed enough to substantiate this diagnosis until this last episode."

Dr. M, in his letter-report of May 23, 1962, in effect stated that he had first felt claimant "Had just a severe strain" but that the doctor thereafter felt claimant "had a rheumotoid spondylitis"; that claimant "progressed along satisfactorily with some improvement until April, 1962, when he began having a great deal more radiating pain down the back of the left leg to the foot"; that claimant then showed definite findings of a herniated disc, was operated on May 18, 1962, at that time was found to have a ruptured disc; that the doctor did "not feel that this ruptured disc was as any direct result of injury in 1958. He could have first caused some injury to the disc space at that time, but I do not feel that we could say the present ruptured disc had been there that long."

Dr. M, in his letter-report of October 18, 1962, stated that claimant, after examination following February 7, or 8, 1962, incident, "showed some gradual improvement, went home on Butazolidin. He was then re-checked on March 6, 1962, at which time he seemed to be improving, and recommended he be re-checked in two months." (Thereafter claimant was operated.)

Dr. M, in his letter-report of February 19, 1964, answering a question posed him in letter of claimant's attorney, stated "it is difficult to answer this question with 'yes' or 'no' with respect to when this man sustained his herniated disc which was ultimately operated on.

"I feel that he had probably the prerequisites for a herniated disc as the result of his original injury, but I do not believe that he had the actual herniated disc until February 8, 1962. I mean by this that I think he had a weakened disc which finally blew out at the time he got up to answer the phone."

The claimant contends that the matter of an accident and injury under the evidence in this case is one of law and not of fact. The claimant cites Acme Material Company et al. v. Wheeler, et al., Okl., 278 P.2d 234. The case is not applicable here. In that case this Court sustained an award granted to the claimant therein for an injury he re-ceived to his back when he rose from the seat of a diesel shovel to get a drink. Here an award was denied. However, in the cited case as here, the medical evidence was in conflict as to whether the claimant's condition was caused by the incident of rising from the seat of a diesel tractor. Therein we quoted from the syllabus in Liberty Glass Co. v. Guinn, Okl., 265 P.2d 493, and stated:

"'The question of whether a workman engaged in a hazardous employment actually sustained an accidental personal injury, when one of fact upon which conflicting evidence is presented, the finding of the commission thereon will be accepted by this court if there is any evidence reasonably tending to support the same.'"

■ This Court has held many times, as in the Acme case, supra, that the findings of the State Industrial Court regarding an accidental injury, will not be disturbed if supported by competent evidence. Bill Morris Tank Company et al., v. Martin et al., Okl., 349 P.2d 15.

■ The claimant contends that his injury is of such character as to require skilled and professional men to determine the cause and extent thereof; that the question is one of science and must necessarily be proved by the testimony of skilled professional persons. In support thereof he cites Magnolia Petroleum Co. v. Clow, 163 Okl. 302, 22 P. 378. He further contends that since the only expert professional evidence offered was that the injury of February 8, 1962, caused the ruptured disc, this case must be decided as a matter of law by this Court. In support thereof he cites Four States Oil & Gas Company v. W. H. Brecht, et al., Okl., 290 P.2d 422; Garr-Wooley Oil Company v. Yeargin, Okl., 355 P.2d 410; and Chief Freight Lines, Inc., v. Rines, Okl., 395 P.2d 799. We agree that the claimant's injury is of such character as to require skilled and professional men to determine the cause and extent thereof and that the question is one of science and

must necessarily be proved by the testimony of skilled professional men.

We do not agree with claimant's contention that the only expert professional evidence offered was of effect that claimant's disc was ruptured in February, 1962; that this was a compensable injury and that this case must be decided as a matter of law. It should be pointed out that neither Dr. H nor Dr. M concludes that rising from the chair and taking two steps *caused* the claimant's injury. Dr. H states in his medical report that the claimant herniated his disc between February 6, 1962, and May, 1962. Dr. M states in his medical report that the claimant had a weakened disc which blew out *at the time* he got up to answer the phone. It is to be observed that neither medical report states the cause of the claimant's injury to have been his arising from the chair in question but they merely tend to establish that that was the time when claimant's disc became herniated.

When conflicting evidence is presented, the question of whether a claimant received an accidental injury is not a jurisdictional one, and if the finding of the Industrial Court on such question is supported by competent evidence, it will be sustained by this Court. Prairie Cotton Oil Co. v. State Industrial Commission, 187 Okl. 378, 102 P.2d 944; Sinclair Prairie Oil Co. v. Stevens, 194 Okl. 109, 148 P.2d 176; Standish Pipe Line Co. v. Johnson, 197 Okl. 238, 169 P.2d 1018; Shell Oil Co. v. Thomas, 202 Okl. 190, 211 P.2d 263.

From the above recounting of claimant's personal and medical evidence, we are unable to determine that the finding of the State Industrial Court "that claimant did not receive an accidental personal injury in February, 1962, as alleged in his Form 3" is not supported by competent evidence.

The State Industrial Court's order denying the award is sustained.

All the Justices concur.