**Donald R. GAINES, Petitioner,**

v.

**SUN REFINERY AND MARKETING, Own Risk and Workers' Compensation Court, Respondents.**

**No. 69139.**

Supreme Court of Oklahoma.

April 3, 1990.

As Corrected May 8 and 14, 1990.

Richard A. Bell, Norman, for petitioner.

William W. Wiles, Jr., Oklahoma City, for respondents.

SUMMERS, Justice:

Claimant sought compensation for loss of pulmonary function. The Workers' Compensation Court denied benefits but the Court of Appeals reversed. We granted certiorari to address the issue of whether the order of the Workers' Compensation Court was supported by any competent evidence. Because we find that all medical reports submitted as evidence failed to comply with A.M.A. Guidelines, we reverse and remand for further proceedings. We further set forth the rule to be applied hereafter in order to obtain appellate review of medical reports, and revise our earlier position as to what shall happen when medical reports are determined on appeal to be insufficient.

The plaintiff, Donald Gaines, was employed for four years as a truckdriver for Sun Refinery and Marketing, the respondent. His duties included the pick up and delivery of crude oil. Every time Gaines picked up or delivered oil to an outdoor storage tank he tested the oil to determine the level of gravity. He accomplished this task by dropping a tube, attached to a rope, to the bottom of the tank through a hatch in the top of the tank. This task was

performed approximately thirty to forty times a week and took between five and ten minutes to perform on each occasion.

At the Workers' Compensation Court Gaines asserted that he was suffering from an injury to his lungs which was caused by the fumes he inhaled during the testing procedures. He submitted a report from Dr. A., which stated he had suffered fifty percent (50%) disability because of the injury. Sun objected to this report on the basis that it contained an inaccurate and incomplete history. Sun alleged that this injury did not arise out of or in the course of Gaines' employment with Sun, but instead was caused by twenty-three years of heavy smoking and eleven years of employment with a laboratory where he was continually in contact with toxic chemicals and fumes. Sun submitted a report from Dr. C., which stated that Gaines was not disabled by a work-related injury, and that any injury was caused by twenty-three years of smoking. Gaines objected to the probative value of the report, stating that Dr. C. did not follow A.M.A. Guidelines.

The Court then introduced, as Court's Exhibit 1, a third report, written by Dr. M., which stated that Gaines' injury arose out of his employment with Sun, and that such injury left him twenty percent (20%) disabled. Sun objected to this report on the basis that it contained an inaccurate and incomplete history. After taking the matter under advisement, the Workers' Compensation Court issued an order denying benefits, because "claimant did not sustain an accidental personal injury arising out of and in the course of claimant's employment with the above named respondent ..." *See* order of the Workers' Compensation Court, Court No. 86–1148F, Feb. 27, 1987. This finding was affirmed by the three judge panel.

Gaines then filed an appeal, alleging that the medical report submitted by Sun was not in compliance with A.M.A. Guidelines and 85 O.S.1987, Ch. 4, Rule 20, and therefore could not be considered as probative and competent evidence. Specifically, Gaines pointed out that Dr. C's report omitted one test required by the A.M.A. Guidelines. Because the report cannot be considered, Gaines urges that the Workers' Compensation Court's order is not supported by any competent evidence and must be reversed.

Answering Gaines' allegations, Sun asserts that the report of Dr. C. complied with A.M.A. Guidelines. Sun further claims that neither the report of Dr. A. nor the report of Dr. M. comply with A.M.A. Guidelines or Rule 20. Specifically, Sun points out that Dr. A's report does not state which tests were performed or how the disability rating was computed. The report was also based on an inaccurate history, as there is no mention of Gaines' prior contact with toxic fumes and chemicals at his previous employment. As to Dr. M., his report indicates that one of the three required tests was performed, and no analysis is given to support the twenty percent (20%) disability rating. The history makes no mention of Gaines' habitual smoking or his prior employment.

The Court of Appeals in an unpublished memorandum opinion reversed the order of the Workers' Compensation Court, holding that the employer's report from Dr. C. was not in compliance with A.M.A. Guidelines, and could not be considered in the adjudication of the case. Thus, the cause was remanded to the Workers' Compensation Court, with directions to "proceed accordingly." We vacate the opinion of the Court of Appeals and reverse and remand this cause for further proceedings in accordance with the views stated herein.

## I. ANALYSIS OF MEDICAL REPORTS

### REPORT OF DR. C.

 We first turn to Gaines' allegation that the report of Dr. C. failed to follow A.M.A. Guidelines as required by Rule 20. Rule 20 requires a statement that the evaluation is in substantial compliance with A.M.A. Guidelines. If there is a deviation from the Guidelines, it must be explained by the doctor in his report. 85 O.S.Supp. 1987, § 3(11). The test applied to resolve the question of substantial compliance is "whether, from a medical report's four cor-

ners, an unexplained, facially apparent and substantial deviation from the Guides can be detected by mere reference to their text." *Whitener v. South Central Waste Auth.*, 773 P.2d 1248 (Okl.1989).

The A.M.A. Guidelines suggest that three preliminary evaluations be performed in order to determine the condition of an individual's respiratory system: 1) dyspnea (shortness of breath. *See* Dorland's Illustrated Medical Dictionary 25th Ed.), 2) tests of ventilatory function which include FVC (forced vital capacity), FEV1 (forced expiratory volume), and the ratio of the two,[1] and 3) VO2 max, which is the oxygen consumption per minute. *See* American Medical Association Guidelines, *The Respiratory System* (2d Ed.1984). Dr. C's report found claimant to be in Class one (1), with no pulmonary impairment. The three tests are required to confirm that an examinee fits that category (Class one); a contradictory result in any one of the three can indicate he is impaired and thus not in Class one (1). *See* A.M.A. Guidelines, at p. 86 Chart 1, and p. 98, Figure 2. In our case Dr. C's report indicated that he conducted only two of the three evaluations. Thus, we must agree that the report did not substantially comply with A.M.A. Guidelines, and that such is apparent by mere reference to the text.

We held in *Perlinger v. J.C. Rogers Constr. Co.*, 753 P.2d 905, 907 (Okla.1988), *LaBarge v. Zebco*, 769 P.2d 125, and 127 (Okla.1988), *Whitener*, supra at 1251, that evidence which is not in substantial compliance with Rule 20 is not competent evidence upon which the trial court may base its conclusion. Because the report of Dr. C. reveals a substantial deviation from the Guidelines, and does not explain the deviation, we must agree that it is not competent evidence.

## REPORT OF DR. A.

Refuting Gaines' allegations, Sun points out that Dr. A's report did not comply with A.M.A. Guidelines for three reasons: (1) the report was based on inaccurate and incomplete history, (2) not all the required evaluations were made, and (3) there was no explanation of how the fifty percent (50%) disability rating was reached. Since we agree with Sun's position on the first contention we do not address whether its 2nd and 3rd objections were timely preserved for appeal. Nor do we reach the merits of those contentions. (Our pronouncements in Parts II and III will provide guidance on such matters in the future.)

■ Before the first issue may be addressed, we must determine whether it has been preserved for appeal. Rule 21 requires a timely objection at trial in order to preserve for review any objection regarding *probative value*. 85 O.S.Supp.1987, Ch. 4, App., Rule 21. Rule 20, which allows for an objection within ten days of the receipt of the medical report, is limited by its own terms to objections concerning *admission of the report*.[2] As explained in *Whitener*, 773 P.2d at 1249 n. 1, the objection to a report's admissibility is an objection to its competency, rather than its probative value. Hence, Sun was not required to object prior to trial, as its objection was not one as to admissibility but instead challenged the probative value of the medical report. Sun timely objected at trial on the basis that the report contained inaccurate

---

1. The A.M.A. guides also provide for a single breath Dco when the patient's respiratory complaints are of greater severity than the spirometry results would indicate. In Table 1 on page 86 a class four (4) *rating refers to the Dco test.* No Dco values are specified because of a large variation in the Dco measurement. A.M.A. Guides at 97.

2. The pertinent part of Rule 20 is as follows: Within ten (10) days of receiving a copy of the other party's verified or declared report, a party-recipient shall advise the Court in writing if there is an objection to the admission of the verified or declared report in evidence. A copy of the objection shall be mailed to all parties of record in the claim. Unless the Court and the other parties are timely notified of the objection, the party-recipient of the verified or declared report shall be deemed to have waived the right to object and the verified or declared report shall be admitted into evidence at the trial. When a timely objection is received, the party intending to offer the verified or declared report shall, within a reasonable time, arrange for the taking of the physician's deposition.

and incomplete history. This objection clearly saves for appellate review Sun's first contention.

■ On review, this Court must determine whether the report of Dr. A was in substantial compliance with Rule 20(a) which requires a ·complete history, and Rule 20(i) which requires that the A.M.A. Guidelines be followed. With regard to the respiratory system, the A.M.A. Guidelines make specific requirements as to history:

> "Environmental exposure, tobacco usage and chronological occupational data: A detailed history of the patient's employment in chronological order should be obtained. It is easiest to begin with the most recent job and work back to the earliest job. The examiner should ask about the *specific activities in each job,* rather than about only the job title. An employee should be questioned about exposures to dusts, gases, vapors and fumes. The specific information required involves (1) the year he or she was first exposed to an agent; (2) the extent of the exposure; (3) the total number of years of exposure; (4) his or her estimate of the hazard that the agent posed; and (5) the number of years since exposure ceased. (emphasis added)

When considering whether the report was based on an incomplete or inaccurate history, a question as to the applicability of the *LaBarge* "facially apparent" test is raised. The *LaBarge* test applies to those situations wherein this Court is deciding "whether, from a medical report's four corners, an unexplained, facially apparent and substantial deviation *from the guides* can be detected by mere reference to their text." (Emphasis Added.) Obviously, an inaccurate or incomplete history cannot generally be determined from the four corners of the report. Ordinarily an inaccurate or incomplete history may only be shown by other testimony or evidence which casts doubt on the history specified in the report. In those situations the "facially apparent" test is inadequate, and reference to evidence other than that contained in the report is necessary to resolve the issue.

■ Our analysis is that the history relied on by Dr. A. does not show an unexplained, *facially apparent* and substantial deviation from the Guides. It does, however, show a significant departure from the Guidelines when evaluated in light of other uncontroverted evidence. For example, it is clear that the Doctor failed to make a specific and detailed history with regard to past "exposures to dusts, gases, vapors and fumes." The Guides require that "each job" be so covered. Dr. A. made mention of Gaines' prior employment but apparently made no inquiry into the "specific activities" which would have revealed eleven years of contact with toxic chemicals and fumes. He did not question the claimant regarding the period or extent of exposure nor did he estimate the hazard posed by the toxic chemicals and fumes. We realize that in many instances, the omission of an historical fact may not invalidate a doctor's report. *Refrigerated Transp. Inc. v. Creek,* 590 P.2d 197, 200 (Okla.1979). Nevertheless, in the present case, the specific details required by the guides seem critical to Dr. A.'s report.

Dr. A. also relied on inaccurate information that Gaines was "continuously exposed to continuous chemicals, gas fumes, and diesel fumes." Gaines' testimony indicated such exposure was not constant throughout his work day. Instead, his exposure to fumes was limited to the times of testing the gravity in the storage tank. While Gaines also urged that he was continuously exposed to diesel fumes from his truck, he admitted that this exposure was limited to instances when he drove the truck with the windows down. Thus, Dr. A. relied on inaccurate history when making his evaluation. A doctor's opinion must be predicated on a history consisting of a set of facts substantially consistent with those in evidence, failure of which renders the report of no value. Rule 21, Rules of the Workers' Compensation Court. See *Snow v. Kinta Stripping Co.,* 372 P.2d 34 (Okl. 1962). Here again the medical history's shortfall is not "facially apparent", but the employer's objection reserved the objector's right to show wherein it was substan-

tially incorrect in light of other uncontroverted evidence. We thus find the history was not in substantial compliance with the A.M.A. Guidelines, was further flawed for lack of accuracy in a material way, and that the Employer's objection based on lack of probative value should properly have been sustained.[3] Finding a lack of substantial compliance with Rule 20(a), as well as with Rule 20(i), then under the rule of *Perlinger* and *LaBarge* this report may not be the basis for an award.

## REPORT OF DR. M.

■ Sun also contends that Dr. M's report failed to meet the standards of Rule 20. Sun had objected to the probative value of the report at trial, thus preserving the error for appellate review. Dr. M's report makes no mention of Gaines' prior history of heavy smoking or his prior exposure to toxic chemicals and fumes. Again, these facts are critical, and their omission is an unexplained, substantial deviation from the Guides. The report also lacks details as to the tests performed and their results. Application of the rule of *Perlinger* and *LaBarge* requires that the report not be considered as competent evidence, as it does not substantially comply with Rule 20(a), (c) & (h).

## LAY TESTIMONY

■ Because all three medical reports fail to meet the requirements of Rule 20 and are therefore not competent evidence upon which to base a conclusion, we must consider whether the lay testimony of Gaines' supplies sufficient evidence to support the Workers' Compensation Court's order. In *Special Indemnity Fund v. Stockton*, 653 P.2d 194 (Okl.1982), we held that "[w]here the disability is of a character to require expert professional testimony to determine the cause and extent, the

question is one of science and must be proved by expert testimony, the absence of which renders the evidence insufficient to sustain an award." *Id.* at 199; *LaBarge*, 769 P.2d at 128. In the present case, the cause of the injury and the extent of the impairment, if any, is a matter within the expertise of medical professionals, and must "necessarily be proved by the testimony of skilled professionals." *Hill v. Western Co.* 424 P.2d 72, 74 (Okla.1962). Without medical evidence, the testimony of Gaines is insufficient to support the conclusion of the Workers' Compensation Court.

■ Because there is insufficient evidence upon which the Workers' Compensation Court may base either an award or a denial of an award, the cause is reversed and remanded for further proceedings, so that the parties may be "given an opportunity to present further evidence of a competent nature insofar as is necessary to definitely settle the issue involved." *Stockton*, supra at 201. *See also Ed Wright Constr. Co. v. McKey*, 591 P.2d 302, 305 (Okla.1979).

## II. APPELLATE REVIEW

■ Numerous recent cases, including the one before us, call upon the Court of Appeals and Supreme Court to review medical reports in workers' compensation cases for alleged non-compliance with the A.M.A. Guidelines. *See, e.g., Spangler v. Lease–Way Automotive Transp.*, 780 P.2d 209 (Okla.App.1989); *Whitener*, 773 P.2d 1248 (Okla.1989); *Dry v. Pauls Valley Health Care Facility*, 771 P.2d 238 (Okla.App.1989); *LaBarge*, 769 P.2d 125 (Okla.1988); *Goodrich v. Hilton*, 634 P.2d 1308 (Okla.1981). In the past we have reviewed such complaints if parties preserved the issues by making objections at the time the report is admitted. Rule 21, of course, requires such objections.[4] Compensation

---

**3.** We have noted that such an objection is analagous to a demurrer to the evidence in Compensation Court practice. *Whitener,* supra, at 1249, footnote 1.

**4.** Rule 21. Objections to Evidence.

An objection to testimony offered by oral examination in open court must be made at the time the testimony is sought to be elicited.

An objection to testimony offered by deposition must be interposed at the time the deposition is offered or at the deposition hearing.

An objection to medical testimony offered by verified or declared report, if on the grounds

courts, as well as this Court and the Court of Appeals on review, have been generous with objecting parties insofar as 12 O.S. 1981, § 2104 is concerned. That section provides:

> Error may not be predicated on a ruling which admits or excludes evidence unless ....a timely objection or motion to strike appears of record, *stating the specific ground of objection,* if the specific ground was not apparent from the context.... (emphasis added)

In this case, as with most others recently reviewed by us, the grounds given at trial for objections have been general, not specific. As a practical matter the *appellate* courts are being employed to be courts of first review as to whether A.M.A. guidelines are met. Such is not the function of appellate courts. Trial courts are not traditionally reversed for error unless the error was called to their attention at a time when they themselves could reasonably be expected to correct it. *Middlebrook v. Imler, Tenny & Kugler,* 713 P.2d 572 (Okla.1985).

 Henceforth the appellate courts of this state will not reverse for failure to follow Rule 20 or the A.M.A. Guidelines unless an objection is made in compliance with Rule 21 that also states the *specific grounds* under § 2104. The objection may be either for lack of competency or lack of probative value, but an objection with a mere reference to lack of A.M.A. Guidelines will not suffice for specificity. A party must state the specific provision of Rule 20 and/or the A.M.A. Guidelines which is the basis of the objection. For example, if a party would ask this Court to reject a report for failure to administer the single breath Dco test, he must have initially asked the trial court to reject the report for the doctor's failure to have administered that particular test. If he would ask this Court to disqualify a report for inade-

quate history in that the claimant's history of exposure to other toxic chemicals was not included, he must first have made that substantially identical request to the trial court. We will make like requirements with respect to alleged errors in computations, uses of ratios, percentages of disability, and so forth.[5] Absent objections to medical reports made with such specificity the appellate courts hereafter will rely on a reporting physician's Rule 20–required assertion that his report substantially complies with A.M.A. Guidelines, and appealing parties in Compensation Court cases will not be heard to advance arguments thereon at this level that were not expressed at the trial of the case. Because arguably this decision overrules "clear past precedent," its application will be prospective only. *Carlile v. Cotton Petroleum Corp.,* 732 P.2d 438, 445 (Okla.1986); *Great N. Ry. Co. v. Sunburst Oil & Ref. Co.,* 287 U.S. 358, 364, 53 S.Ct. 145, 148, 77 L.Ed. 360 (1932). Thus, it will be applied to those cases which are tried after the mandate is issued in this case.

## III. MODIFICATION OF THE PERLINGER RULE

 Up until now the rule applied to cases on appeal is that which was enunciated in Part I of this opinion. If both parties' medical reports are found to be incompetent, the cause is remanded for proceedings to allow competent evidence to be presented. However, in cases where only one report is found to be incompetent, the party opposing the admission of the report receives benefit of the rule enunciated in *Perlinger,* supra.

In *Perlinger,* the doctor's report of the prevailing respondent was held on appeal to be not in compliance with A.M.A. Guide-

---

that (1) it is based on inaccurate or incomplete history or is otherwise without probative value, or (2) it does not properly evaluate claimant's impairment or disability, as the case may be, in accordance with the Workers' Compensation Act, must be interposed at the same time it is offered into evidence.

Unless an objection is timely made, it shall be waived. Any legally inadmissible evidence that

stands admitted without objection shall be regarded as admitted as part of the proof in the case. 85 O.S.1981 Ch. 4, App.

**5.** The trial court must rule on the objection prior to any award being entered or denied. Any trial court finding a report to be so flawed should then afford the offering party additional time, if requested, to furnish a corrected report.

lines. The report submitted by the losing claimant was the only competent evidence which could be considered. This Court reasoned that because the claimant's report was the only competent evidence, judgment must be entered in favor of the claimant, awarding the disability percentage stated in the claimant's report.[6] This type of ruling has been considered by some to legitimize recovery by windfall in such cases.

Such a rule favored the party who remained mostly silent at trial with regard to errors in the opponent's medical report. A reward for such silence is inconsistent with the norm now set forth by this Court which encourages parties to specifically object to errors in the doctor's report at the first opportunity. Rather than making a perfunctory objection at trial and raising specific objections for the first time on appeal, we seek to facilitate the trial court's review of the medical reports by encouraging meaningful objections which allow the trial court an opportunity to review and correct such errors before they reach the appellate stage.

There are many cases now pending on appeal which were tried without the benefit of our pronouncements in Part II. We determine that in light of today's ruling it would be inconsistent in such cases to continue to reward litigants who successfully nullify the victorious opposition's only medical evidence on appeal. We now declare the better practice to be as herein provided, and thus modify *Perlinger* and *LaBarge*, to the extent that they would necessitate total victory for any party obtaining a reversal on appeal under Rule 20. Henceforth, and until such time as cases shall come before us tried after mandate herein, when a medical report which is the sole basis for an award or denial of award is held to be incompetent or non-probative as evidence under Rule 20 of the Rules of the Workers' Compensation Court, this Court will reverse the judgment on which it is based and remand for further proceed-

ings, following the example of *Stockton*, 653 P.2d at 200–01.[7]

Accordingly, this cause is reversed and remanded for further proceedings.

HODGES, LAVENDER, DOOLIN and ALMA WILSON, JJ., concur.

KAUGER, J., concurs specially.

OPALA, V.C.J., concurs in part, dissents in part.

HARGRAVE, C.J., and SIMMS, J., dissent.

KAUGER, Justice, concurring specially:

I agree with the majority opinion that *Perlinger v. J.C. Rogers Constr. Co.*, 753 P.2d 905, 907 (Okla.1988), and *LaBarge v. Zebco*, 769 P.2d 125, 127 (Okla.1988), should be suspended until "... such time as cases shall come before us tried after mandate herein." I also agree that, after these conditions have been met, employers and employees alike must present competent evidence of injury at the time of trial—there will be no more "overs." This rule is necessary to preserve judicial economy, and to assure that there will be a meaningful end to litigation.

SIMMS, Justice, dissenting:

I must respectfully dissent. The majority finds there is insufficient evidence upon which the Workers' Compensation Court may base either an award or a denial of award, and remands this cause under the authority of *Special Indem. Fund v. Stockton*, Okl., 653 P.2d 194 (1982). *Stockton* addresses two questions of first impression involving the Workers' Compensation Act of 1977. We therein held that substantial compliance with Rule 20 is mandatory and *Stockton* was remanded because fundamental fairness required we give the parties an opportunity to comport with newly announced principles of law.

---

6. *La Barge, supra*, followed *Perlinger* to a similar result.

7. We shall continue to review medical reports by the standard set out in *LaBarge* and *Whitener, supra*. That test is whether from the report's four corners, an unexplained, facially apparent and substantial deviation from the Guides can be detected by mere reference to the text. *Whitener, supra* at 1251.

*Stockton,* in my view, did not forever excuse the fundamental rule of jurisprudence and particularly Oklahoma Workers' Compensation procedure that the burden of proof in workers' compensation cases rests upon claimant seeking benefits to establish all the elements of his claim. *Armco, Inc. v. Holcomb,* Okl., 694 P.2d 937 (1985), and cases therein cited. Because there is an absolute failure of proof in this case for reasons the parties should have known since 1982, I would affirm the trial court even though this Court today promulgates new law in Part II of its opinion.

I am authorized to state that Chief Justice Hargrave and Vice Chief Justice Opala join with me in the views expressed herein.

OPALA, Vice Chief Justice, with whom HARGRAVE, Chief Justice, joins, dissenting.

The court holds that the Workers' Compensation Court's order denying this claim must be vacated because the employer's medical expert, who found the claimant to be free of respiratory impairment, failed to comply with the American Medical Association's "Guides to the Evaluation of Permanent Impairment" [1] [Guides]. I cannot accede to this part of today's pronouncement for the following reasons: (1) this claim was denied *for absence of a work-related pulmonary injury—a fact found by the trial tribunal, which claimant does not dispute* and (2) even if I were to assume the claimed disability to have been job-related, it is my firm view that the employer's medical expert did not deviate from the Guides. Neither can I agree with today's legal assessment of the *claimant's* medical opinion. In my view, the court errs in gauging the probative value of that opinion by applying *pre-Evidence Code* norms of yesteryear's Oklahoma common law, *now abrogated.*

I concur in that part of today's opinion which announces a departure from the *Perlinger* [2] "jackpot rule." [3] Whenever an appellate court should conclude in the future that the employer's or the claimant's medical evidence is fatally flawed, no longer will the trial tribunal be directed to enter, on remand, an award based upon competent evidence of the opponent. I welcome and espouse this change.

I.

THE EMPLOYER'S MEDICAL REPORT
*SUPPORTS* THE TRIAL TRIBUNAL'S ORDER DENYING THIS CLAIM

The claimant seeks permanent partial disability compensation for respiratory impairment sustained while on the job for this employer. The trial judge considered three medical letter-reports—the claimant's, the employer's and the independent examiner's. The claimant's physician, having found his lungs to be impaired as a result of continuous exposure to fuels and other chemicals, rated his disability at 50%. The court-appointed expert evaluated the condition at 20%. The employer's medical expert attributed *no* impairment to the workplace *and* concluded "[a]ny symptoms [of respiratory disease] he does have ... are due entirely to 22 years of heavy smoking, although he has quit the last three years."

The trial judge found the claimant "did not sustain an accidental personal injury arising out of and in the course of claimant's employment with the above named respondent [the employer]." A three-judge panel affirmed the order denying the claim. The Court of Appeals vacated the compensation court's decision, concluding "there is no competent evidence to support the finding of the trial court." Citing *Perlinger v. J.C. Rogers Construction Company,* [4] the appellate court remanded the claim, implic-

---

**1.** Although the third (1988) edition of the AMA Guides has been published, the claimant concedes, and the court recognizes, that the 1984 version applies to this claim.

**2.** *Perlinger v. J.C. Rogers Const. Co.,* Okl., 753 P.2d 905, 907 (1988).

**3.** See *LaBarge v. Zebco,* Okl., 769 P.2d 125, 130–131 (1989) (Opala, J., concurring in part and dissenting in part); *Perlinger v. J.C. Rogers Const. Co., supra* note 2 at 907 (Opala, J., concurring in part and dissenting in part).

**4.** See *supra* note 2.

itly directing that an award be made based on "the only competent evidence"—i.e., the reports of the claimant's and court-appointed medical experts.

On review, claimant's brief-in-chief attacked *only* the employer's medical expert's method of evaluating respiratory impairment. For corrective relief claimant relied solely on the contention that his *zero impairment rating* by the employer's doctor stems from an unexplained deviation from the Guides. *He did not question the physician's primary conclusion and the trial tribunal's critical finding that there is no job-related injury to be compensated.* This *alone* makes a discussion of a claimed deviation from the Guides purely academic and dehors the scope of issues tendered for review. For purposes of workers' compensation an assessment of permanent disability presupposes the existence of some on-the-job injury. Because the employer's medical evidence supports the trial tribunal's finding that the claimant's injuries do not result from harm incurred in and about the working environment, I would sustain the order denying this claim.

## II.

*EVEN IF* THE CLAIMANT DID SUFFER AN ON–THE–JOB INJURY, THE EMPLOYER'S MEDICAL REPORT IS *NOT WITHOUT* PROBATIVE VALUE

Assuming the dispositive question were, as the claimant urged on review, whether the employer's medical expert improperly

deviated from the Guides, the answer would *favor the employer.* Today, the court holds that the results of *three* breathing measures—forced vital capacity (FVC), forced expiratory volume ($FEV_1$) and their ratio as percent ($FEV_1/FVC$)—*must be within the lower limits of normal* to make a zero impairment rating conformable to the Guides.[5] In this approach the court seems to depart from the teachings of *Whitener v. South Central Solid Waste Authority,*[6] where we held that a respiratory "impairment rating may be rested on the results of but one" of the three ventilatory function tests. *In any event,* the order denying this claim must still be sustained because *not only were all three measurements correctly made by the employer's physician, but also the results of each are within the normal range and hence support the doctor's view as to the absence of respiratory impairment.* See the attachment to this dissent, which shows the correctness of supporting calculations and findings.

The claimant argues, in essence, that the zero impairment rating given by the employer's physician is based on a miscalculation. This alleged error is said to constitute an unexplained, and hence impermissible, deviation from the Guides. *The claimant is clearly wrong.* The employer's evaluation is accurate because his medical expert made the necessary mathematical adjustment for this claimant's race. Counsel for the claimant apparently overlooked this requirement. For a detailed explanation, see the attachment to this dissent.

**5.** The court's opinion lists "three tests ... required to confirm that an examinee fits ... [the 0% impairment] category." They appear to include: 1) dypsnea (shortness of breath), 2) ventilatory function (FVC, $FEV_1$, $FEV_1/FVC$) and 3) "oxygen consumption per minute" or measured exercise capacity ($VO_2$ Max). Because *neither* the 1984 *nor* the 1988 version of the Guides requires normal results from *all these* measurements as a precondition to a finding of no impairment, I assume the three *required* tests to which the court refers are those of ventilatory function alone.

Although the 1984 version of the Guides governs this claim (see *supra* note 1), the 1988 edition does contain a noteworthy change. It provides

that the "[r]esults for all *four* measures of lung function *must* be in the normal range for a person to be considered not impaired according to physiologic parameters." (Emphasis added.) Three of those four tests are for ventilatory function (FVC, $FEV_1$ and $FEV_1/FVC$ ratio). The fourth measurement is the diffusing capacity of carbon monoxide, $D_{co}$. While the latter test is *not* pertinent to a zero impairment classification, according to the *1984* Guides, both the 1984 and 1988 editions allow the "measured exercise capacity" test *alone* ($VO_2$ Max) to be used as an *alternative* basis for placing the examinee in the 0% impairment category.

**6.** Okl., 773 P.2d 1248, 1251 (1989).

## III.

### A MEDICAL REPORT'S PROBATIVE VALUE MAY BE ADVERSELY AFFECTED BY THE EXPERT'S FAILURE TO ASSUME A COMPLETE AND ACCURATE HISTORY ONLY THROUGH CROSS–EXAMINATION YIELDING A CONTRARY OPINION OR DISCLOSING THE EXPERT'S INTENT TO ABANDON HIS ORIGINAL OPINION

The court concludes the *claimant's* medical report lacks probative value because the physician relied upon an inaccurate or incomplete history when he attributed to the employee a 50% disability rating. At the hearing the employer challenged the report's probative value for this very reason. Today the court views the medical opinion as utterly devoid of probative value *after no more than comparing the history noted in the report with "other testimony or evidence."*

Flaws relating to history arise in two contexts: when an expert's opinion rests on some false assumption or when it is tainted by incomplete facts. Discrepancies may be initially apparent from a facial examination of competing medical letter-reports or they may escape discovery until some point in the course of an evidentiary hearing. At common law, the probative value of an expert's opinion *stood destroyed* upon mere showing that the expert relied upon inaccurate or incomplete facts material to the professional's assessment.[7] This approach is no longer valid in light of the changes effected by the Code provisions. See 12 O.S.1981 §§ 2703 and 2705.[8] Today it is the *cross-examiner who has the burden of showing, through cross-examination, the expert's failure to assume a complete or accurate history and of adversely affecting the opinion's probative value by eliciting either a contrary opinion or the expert's intent to abandon his original view based on the facts conformable to the proof in the record.*[9]

*Assuming* the probative-value status of the claimant's medical report were now in question on certiorari, I would hold generally that when the factual basis of an expert opinion is challenged for assumption of false or incomplete facts, the party against whom the evidence is offered has the burden of showing, *through cross-ex-*

---

**7.** See *Glaspey v. Dickerson,* Okl., 350 P.2d 939, 942 (1960).

**8.** The terms of 12 O.S.1981 § 2703 provide:
"The facts or data in the particular case upon which an expert bases an opinion or inference *may be those perceived by or made known to him at or before the hearing.* If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." (Emphasis added.)
The terms of 12 O.S.1981 § 2705 provide:
"The expert may testify in terms of opinion or inference and give his reasons therefor *without prior disclosure of the underlying facts or data,* unless the court requires otherwise. *The expert may be required to disclose the underlying facts or data on cross-examination."* (Emphasis added.)
Since "an expert may testify in the form of an opinion without prior disclosure of the underlying facts or data," a discrepancy between facts adduced in evidence and those shown to have been assumed by the expert does not by itself operate to sap or destroy the opinion's probative value. See *Tiedemann v. Radiation Therapy Consultants,* 299 Or. 238, 701 P.2d 440, 444 (1985) and *Bostick Tank Truck Service v. Nix, infra* note 9 at 1348; see also 1 Whinery, Okla-

homa Evidence, § 2705 at 255 (1985) ("Section 2705 complements Section 2703 and *does not require, but permits,* the direct examiner to bring out the underlying data upon which the expert's opinion is based, if it is appropriate and does not confuse the trier of fact or require undue time consumption" (Emphasis added.)); Blakey, *An Introduction to the Oklahoma Evidence Code: the Thirty-fourth Hearsay Exception,* 16 Tulsa L.J. 1, 5, 8 (1980); Jackman and Gilsinger, *Expert Testimony Under the Oklahoma Evidence Code,* 61 O.B.J. 767, 774–775 (1990).

**9.** *Bostick Tank Truck Service v. Nix,* Okl., 764 P.2d 1344, 1348 (1988). See also *Smith v. Ford Motor Co.,* 626 F.2d 784, 793–794 (10th Cir. 1980), cert. den. 450 U.S. 918, 101 S.Ct. 1363, 67 L.Ed.2d 344 (the combined effect of Rules 703 and 705, Federal Rules of Evidence, [or 12 O.S.1981 §§ 2703 and 2705, *supra* note 8] is to place the burden of exploring the facts and assumptions underlying the expert's opinion squarely on the shoulders of opposing counsel in cross-examination); *Bryan v. John Bean Division of FMC Corp.,* 566 F.2d 541, 545 (5th Cir. 1978) (*"the onus of eliciting the bases of the opinion is placed on the cross-examiner"* (Emphasis added.)).

amination, that the opinion would have been different had all the material and correct facts been assumed. If a medical opinion rests on a *facially* flawed history, that is, one in which factual inaccuracies or deficiencies are discoverable *before* hearing on mere visual inspection, then an objection to its *competency* (admissibility) should be filed and the expert's deposition taken to ferret out the underlying facts. Should a discrepancy develop or initially appear at a hearing of the claim, the party against whom the opinion is offered should be given, upon request, an *opportunity adversely to affect* the opinion's probative value through cross-examination of the expert.

In sum, the common law divined a fatal flaw from a materially tainted hypothetical question, while the Code treats an opinion based on differing or less comprehensive data as *only challengeable*, but not *per se* utterly devoid of probative force.[10] Medical opinions now stand as prima facie probative, at least until their evidentiary value has been *adversely affected* through cross-

examination that elicits from the expert either an opinion contrary to that originally given or his intent to abandon his first opinion.[11]

## IV.

## CONCLUSION

The *employer's medical report* is not fatally flawed. It competently supports this claim's denial. Because the "onus of eliciting the bases of the [claimant's expert's] opinion" clearly is cast by the Evidence Code upon the party against whom the report is offered (*here, the employer*),[12] the court's pronouncement today wrongly places *on the claimant*, who was the offering party, the burden of producing a letter-report in which *all material* data assumed are in strict conformity to the facts developed by the evidence.

I would hence vacate the Court of Appeals' opinion and reinstate the trial tribunal's order denying compensation.

## ATTACHMENT

### UNDISPUTED RAW DATA FROM THE EMPLOYER'S MEDICAL REPORT:

Claimant is a black male:

Age: 46 year old

Weight: 186 lbs.

Height: 5′8″=173 cm (68 in. × 2.54 cm/in. = 172.72 cm)

### OBSERVED PULMONARY FUNCTION (SPIROMETRY RESULTS):

Forced vital capacity = FVC = 3.50 liters (1.)

Forced expiratory volume = $FEV_1$ = 3.11 1.

Ratio as percent = $FEV_1/FVC$ = 89% (3.11/3.50) × 100

### PREDICTED NORMAL VALUES DERIVED FROM TABLES USING RAW DATA:

10. An expert's opinion which may be deemed *utterly devoid of probative value* for a facially apparent fatal departure from the Guides must be distinguished from one that is *vulnerable to destruction* by cross-examination because of discrepancies in or of incomplete facts assumed by the expert. In the former instance, the question presented is one of law, *LaBarge v. Zebco, supra* note 3 at 127, while in the latter instance, it is one of credibility and hence beyond the reach of a reviewing court's scrutiny. See *Peabody Galion Corp. v. Workman,* Okl., 643 P.2d 312, 314–315 (1982).

11. When facts at variance with those assumed in a physician's medical letter-report or deposition are revealed, it devolves upon the party opposing the proof *to challenge* the probative value of the opinion for assumption of an inaccurate or incomplete history or for want of

some critical fact. If the trial judge should not sustain the challenge, the party against whom the opinion is offered must be afforded, upon request, an opportunity to show, through cross-examination, that the expert's opinion would be different or abandoned if the complete or correct facts were known. Should the trial judge rule against the offering party, the latter must be afforded the opportunity either to stand on the opinion or to replace it. This practice in the Workers' Compensation Court seems to be required by the Evidence Code's provisions that abolish the common law's hypothetical question device. See *Bostick Tank Truck Service v. Nix, supra* note 9 at 1348; *Whitener v. South Cent. Solid Waste Auth., supra* note 6 at 1249 n. 2; see also *Bryan v. John Bean Division of FMC Corp., supra* note 9 at 545.

12. See the authorities cited *supra* note 9.

FVC $\quad$ = 4.75 1. (Table 2, AMA Guides, 2d ed., at 89)
FEV$_1$ $\quad$ = 3.85 1. (Table 4, at 91)
FEV$_1$/FVC = 81.0% (Table 6, at 93)

The *lower limit of normal* for FVC is the table-derived value for FVC minus the 95% Confidence Interval or 4.75 − 1.12 = *3.63* 1.

The *lower limit of normal* for FEV$_1$ is the table-derived value for FEV$_1$ minus the 95% Confidence Interval or 3.85 − 0.842 = *3.01* 1.

The *lower limit of normal* for FEV$_1$/FVC is the table-derived value for FEV$_1$/FVC minus the 95% Confidence Interval or 81.0% − 8.28 = *72.7%*.

\* \* \* \* \*

"The spirometry results for black patients should be divided by 0.9 before they are compared to the predicted values." AMA Guides, 2d ed., at 89.

\* \* \* \* \*

CLAIMANT'S ADJUSTED SPIROMETRY RESULTS:

FVC $\quad$ = *3.89* 1. (3.50 1./0.9)
FEV$_1$ $\quad$ = *3.46* 1. (3.11 1./0.9)
FEV$_1$/FVC = *89%* (3.46/3.89) × 100

CONCLUSION:

The claimant's ventilatory function test results are *all* within the normal range:

| | *Claimant's values* | *Lower limit of normal* |
|---|---|---|
| FVC | 3.89 1. | 3.63 1. |
| FEV$_1$ | 3.46 1. | 3.01 1. |
| FEV$_1$/FVC | 89% | 72.7% |