**ZEBCO and Old Republic Insurance Company, Petitioners,**

v.

**Barbara E. HOUSTON, Respondent [Claimant].**

**No. 72613.**

Supreme Court of Oklahoma.

Oct. 23, 1990.

Andrew B. Morsman, Messrs. Best, Sharp, Holden, Sheridan & Stritzke, Tulsa, for petitioners.

Richard A. Bell, Norman, for respondent.

OPALA, Vice Chief Justice.

The issues to be decided on certiorari are 1) whether the medical opinion upon which claimant's award is based lacks probative value and, if so, 2) whether the claimant should be afforded another opportunity to prove her claim. We answer both questions in the affirmative.

The claimant seeks disability compensation for respiratory impairment from inhalation of air pollutants at the workplace. Concluding that her breathing functions are impaired, the claimant's physician testified by both letter-report and deposition her condition resulted from exposure to a "spray," "mist" or "various respiratory particulates" emitted by machinery she operated. He rated her lung impairment at 15%. She was also given a 20% impairment rating for loss of function to the "upper respiratory system" and a 35% impairment rating for the whole body, based on the impairment of both functions. The employer's physician, on the other hand, concluded that the claimant suffers from *no work-related* injury to her respiratory system.

The trial judge found that *"harmful dust, smoke and fumes"*[1] in the workplace caused injury to the claimant's respiratory system. He set permanent partial disability for her pulmonary loss of function at 15% to the whole body; his assessment of her upper respiratory loss of function was 20% to the body as a whole.

The employer had timely challenged the probative value of the claimant's medical evidence, urging, *inter alia,* noncompliance with the American Medical Association's Guides to the Evaluation of Permanent Impairment [Guides].[2] The Court of Appeals held on review that claimant's proof of work-connected harm to her respiratory system had failed and her claim must hence be denied without an opportunity to represent it on remand. Although we too conclude today that the claimant's medical evidence lacks probative value, we grant her quest for certiorari review and hold that under the circumstances of this case she should be afforded an opportunity to cure her deficient medical proof.

## I.

## THE CLAIMANT'S MEDICAL EVIDENCE LACKS PROBATIVE VALUE

The employer had argued before the trial judge and on review that the claimant's medical opinion lacks probative value because her physician 1) failed to comply with the AMA Guides, 2) formed his opinion from an incomplete history and 3) could not, during his deposition, identify (or describe the *nature, concentration* or *source* of) the air pollutants to which the claimant had been exposed at her workplace.

■ The Guides state that the examiner (or physician) *should* question the employee

"about *exposures* to dusts, gases, vapors and fumes. The *specific information required involves* (1) the year he or she was first exposed to an agent; (2) the extent of the exposure; (3) the total number of years of exposure; (4) his or her estimate of the hazard that the agent posed; and (5) the number of years since exposure ceased."[3] (Emphasis added.)

The claimant's medical expert had based his opinion on her *history*, the extent of

---

1. This wording appears to have been taken from the claimant's own testimony rather than from her physician's opinion.

2. The parties agree that the *second* (1984) edition of the AMA's Guides governs the medical evaluations in this claim. Compliance with this publication's standards is mandatory. See 85 O.S.Supp.1988 § 3(11), whose pertinent terms are:

   "* * * * Except as otherwise provided herein, any examining physician *shall only evaluate impairment in accordance with the latest 'Guides to the Evaluation of Permanent Im-* pairment' adopted and published by the American Medical Association. The examining physician shall not deviate from said guides except as may be specifically provided for in the guides. These officially adopted guides shall be the exclusive basis for testimony and conclusions with regard to permanent impairment...." (Emphasis added.)

3. American Medical Association's Guides to the Evaluation of Permanent Impairment (2nd ed. 1984) at 86.

which we view as less than the minimum required by the Guides (excerpted above). As we conclude, the deficiency nullifies the opinion's probative value.

According to the physician, the claimant had worked for the employer eleven years, during which she did "assembly work" and operated a machine that sprayed a "mist" into the air. No other facts about the extent of the employee's exposure to airborne contaminants at the workplace were included as a basis for the physician's opinion. During his deposition the physician denied knowing each exposure's duration (in hours). He also admitted *not knowing* whether the employee's exposure to the emission actually persisted throughout the eleven-year employment period; he only *assumed* that it did. From these answers we conclude the physician must have failed to question the claimant about the frequency of her exposure. In the absence of the "specific information required" for inclusion by the Guides, the claimant's history must be considered deficient and the physician's opinion regarded as devoid of probative force.[4]

█ The Court of Appeals notes in its opinion several other cross-examination questions asked of the physician. The answers reveal his lack of knowledge about the general source of air pollution at claimant's work station. His responses also show he lacked familiarity with the employer's plant premises. Contrary to the appellate court's view, this part of cross-examination alone *did not* destroy the opinion's probative value. The physician *need not* have known the chemical content or names of the contaminants, the size of the building or the results of any environmental studies.[5] The AMA's Guides *do not require* that those facts be known and considered in evaluating respiratory impairment.[6]

While a physician need not predicate his opinion on a chemical analysis of the toxic substances claimed to have caused the employee's respiratory impairment, the medical expert must have enough information to show that the claimant had inhaled some particles known to be harmful.[7] Here, the physician referred to the machine's emission as merely a "spray," a "mist," and as "various respiratory particulates." From his descriptions it is apparent the physician could not have known the substance claimed to have been injurious. For all we know *from the history he considered*, the spray could have been composed merely of water. Although he had drawn a causal nexus between the claimant's condition and some agent he called a "respiratory irritant," we conclude that the described source of functional loss is too indefinite for a probative medical assessment of causation.

The claimant's history—as recited in the *employer's* medical report—indicates that for six or seven years she had worked on a machine, drilling holes into plastic parts.

4. The opinion by claimant's physician was admissible *without an explanation of its basis.* See 12 O.S.1981 § 2705, *infra; Bostick Tank Truck Service v. Nix,* Okl., 764 P.2d 1344, 1348 (1988). The Evidence Code cast on the cross-examining counsel the burden of showing that the opinion, once elicited, lacks probative value. Here, cross-examination did in fact disclose a fatal deficiency in the underlying basis for the opinion admitted in evidence. The physician did not assume facts sufficient as a basis for his opinion that airborne respiratory irritants were present at claimant's work station and dealt harm to her respiratory system.

The terms of 12 O.S.1981 § 2705 provide:
"The expert may testify in terms of opinion or inference and give his reasons therefor *without prior disclosure* of the underlying facts or data, unless the court requires otherwise. *The expert may be required to disclose the* underlying facts or data on cross-examination." (Emphasis added.)

5. See *Beetle Plastics v. Tomlinson,* Okl.App., 602 P.2d 1053, 1054 (1979).

6. The employer refers us to *no* part of the Guides requiring an examiner to know the exact chemical composition of the substances inhaled by the employee.

7. See, e.g., *City of Nichols Hills v. Hill,* Okl., 534 P.2d 931 (1975) (dust); *Louis v. Alton Metal Products Co.,* Okl., 408 P.2d 326 (1965) (spray paint fumes); *National Lead and Zinc Company v. Hightower,* Okl., 302 P.2d 780 (1956) (chlorine gas fumes); *Oklahoma Steel Castings Co. v. Cates,* 195 Okl. 646, 163 P.2d 1013 (1945) (dust); *Utica Square Salon of Beauty v. Barron,* Okl. App., 595 P.2d 459 (1979) (hair spray).

In that task she had been exposed to "a red lubricant type spray which the machine injected onto the drill."[8] This description both amply indicates the employee inhaled some chemical ingredient which could have been pathogenic and, if assumed by her physician, would have been enough identification. The employee's history—as shown by her own physician's opinion—does not include these facts.[9]

The claimant argues on certiorari that because the employer failed to provide her with requested information on the chemical composition of the spray as well as on any environmental studies done at the plant premises, the employer is now "estopped" from arguing that her physician's medical opinion lacks probative value for not ascribing the harm to some specific toxic ingredients of the inhaled mist. Because there is nothing in this record to indicate that the claimant, at the hearing before the trial judge, complained of the employer's resistance to requested disclosures or that she had earlier sought an order compelling the data's production, we need not pass on this argument. Nor do we intimate that chemical analysis of the air was a necessary part of claimant's proof.

## II.

## THE TRIAL JUDGE MUST GIVE THE CLAIMANT ANOTHER OPPORTUNITY TO PROVE HER CLAIM

■ For evaluation of respiratory impairment from inhalation or exposure to "dusts, gases, vapors and fumes" the AMA Guides require that the examining physician ask the claimant about, and hence consider, the "extent of exposure."[10] Al-

though the claimant's doctor admitted he did not know the frequency of the claimant's exposure to the spray which came from the machine at work, the claimant testified that she had inhaled the lubricant for at least half of each working day. In light of these facts, coupled with those revealed in the employer's medical report about the nature of the spray, it appears the claimant may on remand secure a favorable opinion based on her *complete* history.[11] For these reasons,

THE COURT OF APPEALS' OPINION AND CLAIMANT'S AWARD ARE VACATED AND THE CLAIM IS REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS PRONOUNCEMENT.

HARGRAVE, C.J., and HODGES, LAVENDER, ALMA WILSON and SUMMERS, JJ., concur.

KAUGER, J., concurs specially.

SIMMS, J., concurs in vacating the award and dissents from remanding the claim.

DOOLIN, J., dissents.

KAUGER, Justice, concurring specially:

I note that certiorari was granted on March 27, 1990. In *Gaines v. Sun Refinery & Mktg.*, 790 P.2d 1073, 1081 (Okla. 1990), which was mandated on May 4, 1990, we held that:

"Henceforth, and until such time as cases shall come before us tried after mandate herein, when a medical report which is the sole basis for an award or denial of award is held to be incompetent

8. So far as the appellate record reveals, this information was not known by the claimant's physician.

9. Although the claimant's physician had considered her statement that the mist irritated her eyes and lungs and caused her to cough, the history he assumed does not include facts sufficient to identify the "mist" as a substance medically deemed harmful and causative of the adverse physical effects claimed to have resulted from her exposure to it.

10. See the American Medical Association's Guides to the Evaluation of Permanent Impair-

ment (2nd ed. 1984) at 86, whose pertinent text is quoted in Part I of this opinion.

11. We *do not* intimate that the Guides require the physician to know with precision the extent of exposure. It suffices to say that in this case the cross-examination of the claimant's doctor reveals a lack of *any* knowledge about the frequency, duration and even the source of lung-irritating exposure. See also *Gaines v. Sun Refinery and Marketing*, Okl., 790 P.2d 1073, 1079 (1990).

or non-probative as evidence under Rule 20 of the Rules of the Workers' Compensation Court, this Court will reverse the judgment on which it is based and remand for further proceedings, ..."

I concur here because this cause preceded *Gaines.* The Workers' Compensation Court heard this matter on January 13, 1989. I write to re-emphasize that when cases reach us which have been tried after May 5, 1990, employers and employees alike must present competent evidence of injury at the time of trial—there will be no more "overs". This rule is necessary to preserve judicial economy, and to assure that there will be a meaningful end to litigation.

DOOLIN, Justice, dissenting.

The majority continues to violate the spirit of the compensation law by unduly complicating the workers' rights.