Michael W. McGivern, Jill Nelson Thomas, Tulsa, for petitioner.

Robert A. Flynn, Matthew E. Riggin, Tulsa, for respondents.

**SEQUOYAH PUBLIC SCHOOLS,**
**Petitioner,**

v.

**Betty M. HAZELWOOD and The**
**Workers' Compensation Court,**
**Respondents.**

**No. 82390.**

Court of Appeals of Oklahoma,
Division No. 1.

April 19, 1994.

Rehearing Denied May 24, 1994.

Certiorari Denied July 13, 1994.

### MEMORANDUM OPINION

HANSEN, Judge:

On May 1, 1992, Betty Hazelwood, Claimant, filed a workers' compensation claim alleging an occupational disease which resulted in injury to her lungs and respiratory system while working for Sequoyah Public Schools (Employer) as a custodian.

In its order, the trial court found the following:

that claimant has suffered an occupational disease consisting of injury to the lungs and respiratory system due to the continued inhalation of and exposure to harmful

dust, smoke and fumes; that exposure to the said substances were peculiar to or characteristic of claimant's employment with the respondent; that the claimant's last injurious exposure to the said hazard was October 25th, 1991.

The trial court awarded approximately 17 months of TTD benefits and ordered Employer to pay all reasonable and necessary medical expenses relating to medical treatment for these injuries. On September 15, 1993, the three-judge panel affirmed the trial court's order. It is from this order Employer seeks review.

As its sole proposition of error, Employer argues there is no competent evidence to support the finding Claimant suffered an occupational disease which arose out of and in the course of her employment. Specifically, it urges Claimant's expert medical testimony lacks probative value. As support for its argument, it cites this Court to *Zebco v. Houston*, 800 P.2d 245 (Okla.1990). Therein, the employer argued the claimant's medical opinion lacked probative value because the physician, 1) failed to comply with the AMA Guides, (the claim, unlike the present claim, was being heard on the issue of permanent impairment), 2) formed his opinion from an incomplete history, and 3) could not, during his deposition, identify (or describe the nature, concentration or source of) the air pollutants to which the claimant had been exposed at her workplace.

The Supreme Court found the physician's answers on cross-examination revealed his lack of knowledge about the general source of air pollution at the claimant's work station. However, it held the physician need not have known the chemical content or names of the contaminants, the area of the claimant's workplace, or the results of any environmental studies. The Court further found:

> While a physician need not predicate his opinion on a chemical analysis of the toxic substances claimed to have caused the employee's respiratory impairment, the medical expert must have enough information to show that the claimant had inhaled some particles known to be harmful. Here, the physician referred to the machine's emission as merely a "spray," a "mist," and as

"various respiratory particulates." From his descriptions it is apparent the physician could not have known the substance claimed to have been injurious. For all we know *from the history he considered,* the spray could have been composed merely of water. Although he had drawn a causal nexus between the claimant's condition and some agent he called a "respiratory irritant," we conclude that the described source of functional loss is too indefinite for a probative medical assessment of causation.

In the instant case, Claimant's history was not deficient. Dr. R., one of Claimant's medical experts testified that, "I read text, and I read her pathology. I read the old notes. I read x-rays, a serial group of them. I looked at pulmonary function tests, and I asked her questions." Dr. R. testified that during the summer, Claimant, as a custodian, stripped floors and revarnished them at the schools. "And it was during one particular episode that she became very sick, and I think she inhaled fumes that are known to be toxic to lungs and can produce pulmonary fibrosis." He also stated, "She [Claimant] believed she was around chemicals, several chemicals, some of which I know are dangerous. One is potassium hydroxide." He also testified:

Q. And what was that used for?

A. It was used in the stripping chemicals to clean the varnish.

Q. And—

A. Ethyl ketones which are also known to cause small airways disease.

Q. And what did she say she used ethyl ketone on?

A. The ethyl ketone is a, it's a degreaser. It's used for cleaning up floors in schools. And formaldehyde was the other chemical she alluded to. I had no idea stripping chemical would contain formaldehyde, but that's a bad drug. It's a bad chemical. These are what she said. I don't have specific knowledge if that's true.

Also, during cross-examination Dr. R. testified:

Q. What else would cause, though, this condition [hemoptysis] other than some sort of chemical exposure?

A. I can give you a litany, as I told you, of 400 or so causes that are known, and that's maybe half of all that is available. It's just an enormous list, and it's, frankly, fruitless to list them all for you. But we've done the best we can to find out the cause and unfortunately haven't. But I still think, listening to her and talking to her, that the most likely cause of it was occupational.

. . . .

I couldn't find a cause. She ·did have a clear history and felt strongly about it, that it was fumes that occurred at work that made her sick. She saw spots before her eyes, complained of headache, nausea, and vomiting, began to cough blood, and it all fits with an acute exposure at school. We have to rely on that.

Q. On her history?

A. On her history, yeah.

Herein, Dr. R.'s medical opinion was predicated on information from Claimant's medical records and her history. He had sufficient information to indicate Claimant had inhaled harmful chemicals during the floor stripping and varnishing process while on the job. Dr. R.'s is not devoid of probative force. There is competent evidence Claimant was temporarily and totally disabled as a result of an occupational disease contracted while employed by Employer.

SUSTAINED.

JONES, P.J., and ADAMS, J., concur.