Patricia Diane HENRY, Petitioner,

v.

Alanzo SMITH, d/b/a Slick's
Bar-B-Que, Respondent.

No. 67025.

Court of Appeals of Oklahoma,
Division No. 4.

July 28, 1987.

Wilson Jones, Bryce Hill, Frasier & Frasier, Tulsa, for petitioner.

Jesse L. Leeds, Muskogee, for respondent.

BRIGHTMIRE, Presiding Judge.

Involved here is a workers' compensation claim being prosecuted by an employee of Slick's Bar-B-Que who injured her back and tailbone after falling on Slick's slick floor. The sole issue presented is whether the trial court's compensation award is impermissibly based on a finding of a lesser amount of impairment than is supported by competent medical evidence. We hold that

it is, vacate the order appealed and remand for further proceedings.

## I

On October 4, 1984, twenty-eight-year-old Patricia Diane Henry slipped and fell on a water-and-grease-covered concrete floor while an employee of Slick's in Muskogee. Hospital emergency room x-rays revealed a fracture of the coccyx for which the staff physicians recommended physical therapy. Such treatment, along with drugs for pain, were provided by a Dr. Tull, an orthopedic surgeon.

The claimant filed a Form 3 seeking compensation on January 28, 1985. On February 21, 1985, the employer, without leave of court,[1] answered out of time denying "every material allegation contained in claimants [sic] notice and claim." On July 22, 1985, claimant filed an amended Form 3 describing her injuries as being a "[c]racked [t]ailbone, damaged lower nerve system, low back, legs."

At the hearing held July 2, 1986, the employer stipulated that the October 4 injury occurred in the course of the claimant's employment, that the claimant's medical expenses had been paid by the employer, but that no temporary disability payments had been made. Thus the issues before the court were these: (1) Whether the claimant was entitled to temporary total disability from date of the injury to her release to return to work; and (2) the extent of the claimant's permanent partial impairment.[2]

Medical evidence presented by the claimant consisted of the reports of two medical experts. The first, issued by Dr. Hallford, concluded that Mrs. Henry had sustained 17 percent permanent partial impairment of the whole man consisting of 2 percent range of motion limitations, 10 percent due to "chronic coccyx tenderness" and 5 per-

cent "chronic lumbar pain and weight-lifting restrictions." The other, by Dr. Joseph, found the claimant had a 12 percent impairment of the whole man—6 percent range of motion impairment and 6 percent due to "persistent pain in the coccyx and back."

The employer introduced the reports of Dr. Tull, the treating physician, who concluded there was no impairment and of Dr. Morgan who opined there was "5% disability or impairment to the whole body."

The trial judge found that "there is no competent medical evidence to support an award for temporary total disability [and] claimant sustained 2 per cent [sic] permanent partial disability to the body as a whole due to injury to the coccyx [and] no permanent partial disability to the low back," and awarded compensation accordingly.

The claimant does not challenge the denial of temporary total compensation but only the inadequacy of the permanent partial award.[3]

## II

The primary contention of the claimant is that the trial court's finding of only 2 percent permanent partial disability is less than is supported by competent medical evidence.

The argument is that the zero percent report of Dr. Tull, introduced by the employer, is incompetent because it fails to substantially comply with the requirement of Rule 20 to set out a complete history, the complaints, examinational findings, treatment given, etc.[4]

■ The employee's conclusion appears to be correct. Reports that contain no more than a medical opinion as to the percentage of disability are "not sufficient to constitute 'competency' under the 'new Act'," concluded the high court, in *Special*

---

1. Workers' Compensation Court Rule 17, 85 O.S. 1981, ch. 4, app.

2. The claimant was released to return to work January 2, 1985, but said that constant pain as well as restricted motion due to pain have prevented her from returning to similar employment. She has taken a teaching position which does not include "strenuous" activity and af-

fords freedom to move about as her discomfort allows.

3. The denial of a temporary total disability award was proper in that none of the medical reports addressed the subject.

4. *See* Workers' Compensation Court Rule 20, 85 O.S.1981, ch. 4, app.

*Indemnity Fund v. Stockton*, 653 P.2d 194 (Okl.1982), after discussing the requirements of Rule 20.[5]

 Dr. Tull, in his zero percent report referred the reader to his initial report for a history and his progress notes—an "initial report" that was not introduced into evidence.[6] Clearly the Tull report is not competent evidence of the claimant's permanent partial impairment.[7]

 Nor for that matter is the employer's 5 percent report issued by Dr. Morgan.

5. Said the *Stockton* court:

"While the Workers' Compensation Court Rules ... encourage the production of medical evidence by verified or declared report, the Rules also specify the necessary information which will make such reports acceptable. Rule 20, in pertinent part, provides that the following shall be contained in such reports:

(a) A complete history of the claimant, including all previous relevant or contributory injuries with a detailed description of the present injury.

(b) The complaints of the claimant.

(c) The physician's findings on examination, including a description of the examination and any diagnostic tests and x-rays.

(d) The date and cause of the alleged injury and whether, in the physician's opinion, it is job-related.

(e) What medical treatment has already been rendered and what treatment, if any, the physician recommends for the future.

(f) What physical rehabilitative procedures have already been rendered and what rehabilitative procedures, if any, the physician recommends for the future.

(g) The period during which the claimant was temporarily and totally disabled. If the claimant remains temporarily and totally disabled, the physician should so indicate. If temporary total disability has already terminated, he must indicate the date upon which it terminated.

(h) The physician's evaluation of the extent of any impairment with a clear indication as to whether it is temporary or permanent in nature....

(i) Any other detailed factors upon which the physician's evaluation of permanent impairment is based, including the fact that the evaluation is in substantial accordance with the "Guides to the Evaluation of Permanent Impairment" as published by the American Medical Association in 1977. Whenever the physician deviates from the "Guides," the basis for his deviation shall be stated together with full medical explanation....

As noted in paragraph (i) the medical evaluation is required to be in substantial accordance with the *Guides to Evaluation of Permanent Impairment* as published by the American Medical Association.... Where deviation from the *Guides* occur, the physician is required to explain such deviation.

A cursory glance at the medical evidence in this case reveals that it is grossly deficient and in substantial disaccord with the applicable statutes. The insufficiencies are numerous, but those that are notable include:

—a detailed description of the present injury;

—complaints of the claimant;

—findings on examination, including description of the exam and any diagnostic test and x-rays.

Further, there is no statement that the *Guides, supra*, have been complied with and no explanation regarding noncompliance. It is impossible to ascertain whether the examining physicians were even aware that such compliance is required. Finally, the injury of the claimant is never even described."

6. The Tull letter reads:

"Dear Sirs:

The above patient returned to my office on January 15, 1985 as followup of her work related injury of October 4, 1984 while under the employ of the above named company. You have been furnished an initial report which contained history of injury, as well as progress notes outlining treatment to date. My records indicate that the patient was returned to her usual line of work on January 2, 1985 with no restrictions.

Examination at this point reveals the patient's problems to be resolving as anticipated, and it is my opinion that she has achieved maximum benefit of treatment.

In accordance with the AMA Guidelines for the Evaluation of Permanent Impairment, no compensable impairment was sustained as a result of this work related injury. The patient is discharged from treatment at this time, to return only on an as needed basis.

I declare under penalty of perjury that I have examined this report and notice and all statements contained herein, and to the best of my knowledge and belief, they are true, correct and complete.

Sincerely,

/s/

Frank Tull, M.D."

7. In addition to the Rule 20 violation, and perhaps more important, is the fact the report of Dr. Tull has other flaws which render it incompetent. First, the statement that "[e]xamination ... reveals the patient's problems *to be resolving* as anticipated, and ... she has *achieved maximum* benefit of treatment" gives rise to the inconsistent implications that recovery is still in progress on the one hand and on the other that there exists residual impairment from which no further recovery can be expected. (Emphasis added.) Compounding this is the further fact that the foregoing is also inherently inconsistent with Dr. Tull's ultimate conclusion that claim-

His handwritten effort is even more cryptic than Dr. Tull's.[8]

### III

■ Since the two medical reports sponsored by the employer did not constitute competent medical evidence they could not be considered by the trial court in determining the degree of the claimant's impairment.[9] That leaves the claimant's evidence of 12 percent and 17 percent permanent partial impairment. This evidence is contained in two reports which appear to substantially comply with Rule 20 and therefore constitute competent medical evidence with regard to the issue of permanent partial disability. Since there was no competent evidence upon which to base a permanent partial disability finding of less than 12 percent, the order dated July 15, 1986, is vacated and the cause is remanded with instructions to award compensation within the range of permanent partial disability established by the competent medical evidence. *AMF Tubescope v. Hatchel*, 547 P.2d 374 (Okl.1976).

RAPP and STUBBLEFIELD, JJ., concur.

---

ant sustained no impairment. And finally, Dr. Tull stepped out of his role of physician and into the field of law when he advised that claimant sustained "no *compensable* impairment ... as a result of this work related injury." (Emphasis added.) This is a legal, not medical, conclusion. It is the responsibility of the physician to evaluate "the extent of any impairment with a clear indication as to whether it is temporary or permanent in nature." *See* Rule 20(h). It is for the court to decide *compensability* within the range of disability established by competent medical evidence. *AMF Tubescope v. Hatchel*, 547 P.2d 374 (Okl.1976).

**8.** The Morgan letter reads:
"6/30/86
To Whom It May Concern:
I have examined Patricia D. Henry on 3/20/86 relative to an injury she sustained to the buttocks and lower back on Oct[.] 4, 1984.

After examination, I consider her injuries caused a 5% disability or impairment to the whole body.
Sincerely
CF Morgan MD"

**9.** The report requirements of Rule 20 consist of two distinguishable categories—predicatory fact findings on the one hand, and conclusions regarding ultimate disability issues determinable by the court on the other. It is the omission of the former that is fatal to the validity of any ultimate conclusion reached by the physician. Omission of one disability conclusion is not necessarily fatal to the competency of the report so long as it contains a conclusion that is relevant to the disability issues being tried. For this reason omission of a conclusion regarding temporary total disability did not in and of itself destroy the competency of the reports with respect to permanent partial disability but, as the trial court correctly concluded, such omission precluded it from making an award for temporary disability.