Alice L. LaBARGE, Petitioner,

v.

ZEBCO, Northwestern National Insurance, and The Workers' Compensation Court, Respondents.

No. 68221.

Supreme Court of Oklahoma.

Dec. 20, 1988.

Rehearing Denied March 7, 1989.

James E. Lowell, Tulsa, for petitioner.

Thomas E. Steichen, Kevin D. Berry, Rhodes, Hieronymus, Jones, Tucker & Gable, Tulsa, for respondents.

KAUGER, Justice.

The dispositive issue on appeal is whether the medical evidence submitted by the respondent, Zebco (employer), complied with the A.M.A. Guides to the Evaluation of Permanent Impairment pursuant to 85 O.S.Supp.1987 Ch. 4, App., Rule 20.[1] We find that the medical report was not competent evidence because it did not comply with Rule 20, and that it could not be used as a basis for the trial court's decision.

On March 16, 1985, petitioner, Alice La-Barge (employee), was injured while operating a forklift for her employer. Dr. L. performed surgery for two ruptured discs caused by the accident. The employee filed a claim for workers' compensation benefits claiming injuries to the left knee, left leg, left hip and back. She received temporary total disability payments until August 27, 1985, when the parties mutually agreed to terminate the payments. On April 10, 1986, the employee filed for continuing medical treatment and permanent disability attaching a medical report from Dr. K. which concluded that the employee had suffered 40% disability to the whole body. On August 29, 1986, the employee amended her petition to add the issue of psychological overlay resulting from the accident.

At the trial on September 8, 1986, the employee objected to the competency of Dr. L.'s medical report submitted by the employer because it failed to follow the percentages of disability delineated in the AMA Guides. The Guides provide that each operated disc must be accorded a minimum of 5% impairment.[2] Although Dr. L.

---

1. Workers' Compensation Court Rules, 85 O.S. Supp.1987 Ch. 4, App., Rule 20, provide in pertinent part:

    The Court, taking into consideration that it is costly and time-consuming to have physicians actually appear at the time of trial for the purpose of giving live testimony, encourages the production of medical evidence by verified or declared report which shall contain the following, where applicable:

    (a) A complete history of the claimant, including all previous relevant or contributory injuries with a detailed description of the present injury.

    (b) The complaints of the claimant.

    (c) The physician's findings on examination, including a description of the examination and any diagnostic tests and x-rays.

    (d) The date and cause of the alleged injury and whether, in the physician's opinion, it is job-related.

    (e) The medical treatment which has already been rendered and the treatment, if any, which the physician recommends for the future.

    (f) The physical rehabilitative procedures which have already been rendered and the rehabilitative procedures, if any, which the physician recommends for the future.

    (g) The period during which the claimant was temporarily and totally disabled. If the claimant remains temporarily and totally disabled, the physician should so indicate. If temporary total disability has already terminated, the date of termination must be indicated.

    (h) The physician's evaluation of the extent of any impairment with a clear indication as to whether it is temporary or permanent in nature. (In the event the injury occurred before July 1, 1978, the physician shall give an evaluation of the extent of the claimant's disability based on the claimant's capacity to perform ordinary manual mechanical labor.)

    (i) Any other detailed factors upon which the physician's evaluation of permanent impairment is based, including a statement that the evaluation is in substantial accordance with the latest "Guides to the Evaluation of Permanent Impairment" adopted and published by the American Medical Association which were in effect when the examination was made.

    (j) The report itself must be signed by the physician and be verified or contain a written declaration, made under the penalty of perjury, that the report is true. The following form of declaration is suggested: "I declare under penalty of perjury that I have examined this report and all statements contained herein, and to the best of my knowledge and belief, they are true, correct and complete."

2. American Medical Association, Guides to the Evaluation of Permanent Impairment, p. 57, Table 53 (2nd Ed.1984): Impairment Due to Other Disorders of the Spine, provides in pertinent part:

performed the operation which involved two of the employee's discs he rated the employee as having 5% impairment to the whole body. Over the employee's objection Dr. L's medical report was admitted into evidence. The trial court found that: (1) the employee had sustained an accidental personal injury arising out of and in the course of employment; (2) the employee had sustained 12% permanent partial disability to the body as a whole as a result of the injury to the back; (3) the employee did not sustain permanent partial disability to the left hip, left leg or left knee, and; (4) it reserved the issue of psychological overlay for further hearing. The employee appealed the order to the Review Panel. The Review Panel found that the order of the trial court was neither contrary to law nor against the clear weight of the evidence. The trial court was affirmed, and the employee appealed.

■ The employee contends that a medical report which does not rate the employee's impairment according to the A.M.A. Guides, and which does not explain any deviation from those Guides, is not competent evidence. We agree. Medical reports must comply with the A.M.A. Guides as provided by the legislature in Rule 20.[3]

■ Here, Dr. L.'s report consists of four letters and a discharge report. Three of the letters are neither signed nor verified. One letter has the physician's signature. However, it contains an unsigned verification statement rubber stamped at the bottom. The discharge report is signed, but it does not contain a verification statement. The unverified discharge summary and the three letters cannot be melded into a medical report which is in substantial compliance with Rule 20. Only one of the letters can be considered as the medical report, because Rule 20 requires the report to be signed by the physician and contain a verification statement. The

signed letter is facially flawed and fails to comply with Rule 20 because:

1) It does not contain a history of the claimant as required by Rule 20(a).

2) It does not contain any description or findings of diagnostic tests conducted to determine disability as required by Rule 20(c).

3) It does not contain the date of injury, and whether the injury was job-related as required by Rule 20(d).

4) It does not discuss physical rehabilitative procedures rendered or recommended as required by Rule 20(f).

5) It does not provide the period during which the claimant was temporarily and totally disabled and date of termination as required by Rule 20(g). (The employee did receive temporary total disability payments.)

6) It does not contain a basis for his determination that the employee is 5% disabled as required by Rule 20(i).

7) The letter states that it is in accordance with the A.M.A. Guides. However, the doctor rates the employee's disability as 5% to the whole body when the A.M.A. Guides provide that each operated disc constitutes 5% disability to the body as a whole. This doctor operated on two of the employee's discs which under the A.M.A. Guides would be a 10% disability to the whole body. It is apparent from this alone, the doctor did not use the percentages in the A.M.A. Guides as required by Rule 20(i).

We held in *Perlinger v. J.C. Rogers Constr. Co.,* 753 P.2d 905, 907 (Okla.1988), that medical evidence supplied by a written medical report must be in substantial compliance with Rule 20. Evidence which is not in substantial compliance with Rule 20 is not competent evidence upon which the trial court can base its conclusions.[4] Dr. L.'s letter was incompetent evidence and it could not be used by the trial court. On

"B. Intervertebral Disc Lesions ...2. Operated, disc removed without residuals 5%" ...

**3.** *Perlinger v. J.C. Rogers Constr. Co.,* 753 P.2d 905, 907 (Okla.1988); *Special Indem. Fund v. Stockton,* 653 P.2d 194, 200 (Okla.1982).

**4.** *Perlinger v. J.C. Rogers Constr. Co.,* see note 3, supra. See also, *Henry v. Smith,* 742 P.2d 35–6 (Okla.Ct.App.1987).

the other hand, with the exception of the date of termination of the temporary total disability benefits, Dr. K.'s report is a textbook example of a competent medical report in absolute compliance with Rule 20.

In *Special Indemnity Fund v. Stockton*, 653 P.2d 194 (Okla.1982), the cause was remanded to the trial court for a determination because *none* of the medical reports complied with Rule 20. Dr. K.'s report is the only competent evidence submitted as proof of the employee's disability.[5] The *Perlinger* teaching is that when only one medical report, which constitutes competent evidence, is uncontroverted by opposing competent evidence, it may become unnecessary for the trial court to made an independent diagnosis of the employee's condition. Here, *Perlinger* controls because there is a total failure of proof by the employer. We recognize that the decision to remand such cases must be made on a case by case basis because not every case will be so facially flawed or so completely lacking in probative evidence.

■ The issue of permanent disability is one of science, and it must be proven by medical expert testimony. When, as here, a party essentially offers no evidence to establish a defense, there is a failure of proof. The legislature in Rule 20, has made an accomodation for doctors to provide a medical report rather than appear at trial to avoid professional inconvenience. Even though the proceedings are informal, these unsigned letters do not pass muster. Precious judicial resources must not be frittered away in a "game of overs" by either the employer or the employee. The employer has had its day in court to establish its defense on a time and materials basis. It is elementary that where there is a failure of proof there can be no judgment in that party's favor.[6]

■ Pursuant to *Parks v. Norman Municipal Hospital*, 684 P.2d 548, 552 (Okla. 1984), this Court must reverse a trial tribunal's decision unsupported by any competent evidence. The only competent evidence was Dr. K.'s report finding 40% disability to the whole body. Therefore, the order of the Workers' Compensation Court is vacated, and the cause is remanded to the trial court with instructions to enter an award for 40% permanent partial disability to the whole body.

ORDER OF THE WORKER'S COMPENSATION COURT VACATED; CAUSE REMANDED WITH INSTRUCTIONS.

DOOLIN, C.J., and HODGES, LAVENDER, WILSON and KAUGER, JJ., concur.

OPALA, J., concurs in part, dissents in part.

HARGRAVE, V.C.J., and SIMMS, J., dissent.

SUMMERS, J., not participating.

OPALA, Justice, with whom SIMMS, Justice, joins for the portion that is in dissent from the court's opinion, concurring in part and dissenting in part.

I concur in the court's conclusion that the employer's medical report is fatally flawed for noncompliance with AMA Guides.[1] I dissent from today's disposition that directs the trial tribunal, under the authority of *Perlinger v. J.C. Rogers Const. Co.*,[2] to enter an award in accordance with the impairment rating *reported* below by the claimant's medical witness.

## THE ANATOMY OF LITIGATION

The claimant sustained an on-the-job injury while operating a forklift for her em-

5. A chiropractor is a physician under 85 O.S. Supp.1986 § 14 which provides in pertinent part:
   "... D. The term 'physician' as used in this section shall mean any person licensed in Oklahoma as a medical doctor, chiropractor, chiropodist, dentist, osteopathic physician or optometrist...."

6. *J.E. Work, Inc. v. Lovell*, 72 Wash.2d 516, 433 P.2d 896, 898 (1967).

1. American Medical Association's Guides to the Evaluation of Permanent Impairment, p. 57, Table 53(b)2.

2. Okl., 753 P.2d 905 [1988].

ployer. A hospital discharge report reveals she underwent surgery for *two ruptured discs*. The claimant's physician evaluated her *overall* disability at 40 percent to the whole body but separately estimated her motor limitations at 34 percent, sensory loss at 2 percent and herniation-of-discs impairment at 10 percent. The employer's medical report assesses her total accident-generated impairment at five percent. The trial judge rejected entirely the 34 percent rating for motor impairment to give claimant but 12 percent permanent partial disability. This award was affirmed by a three-judge review panel.

The AMA Guides plainly appear to mandate a five percent impairment *for each operated disc*. The employer's report, which evaluates the claimant's impairment at five percent, gives no explanation for the clear departure from the Guides. The report is plainly in discord with the statutory command in 85 O.S.Supp.1987 § 3(11)[3] and

with the implementing Rule 20(i) of the Workers' Compensation Court.[4] Because of this flaw in the disability rating, I would hold employer's medical report to be *fatally defective* and, because of a total failure in respondent's defensive proof, I would direct that the proceeding be remanded for a rehearing before the trial judge.

## I

## A NEW TRIAL IS WARRANTED WHEN THERE IS AN INADVERTENT TOTAL FAILURE OF PROOF

At common law, when there is a failure of proof to sustain a jury verdict the court of review may grant a new trial.[5] We apply the same rules to compensation cases. When one party's proof fails totally and there is *no indication of inexcusable neglect*, that party is entitled to a rehearing of the claim.[6] The compensation order

---

**3.** The terms of 85 O.S.Supp.1987 § 3(11) provide:

"As used in the Workers' Compensation Act:

\* \* \* \* \*

(11) 'Permanent impairment' means any anatomical or functional abnormality or loss after reasonable medical treatment has been achieved, which abnormality or loss the physician considers to be capable of being evaluated at the time the rating is made. *Except as otherwise provided herein, any examining physician shall only evaluate impairment in accordance with the latest 'Guides to the Evaluation of Permanent Impairment' adopted and published by the American Medical Association. The examining physician shall not deviate from said guides except as may be specifically provided for in the guides. These officially adopted guides shall be the exclusive basis for testimony and conclusions with regard to permanent impairment* with the exception of paragraph 3 of Section 22 of this title, relating to scheduled member injury or loss; and impairment, including pain or loss of strength, may be awarded with respect to those injuries or areas of the body not specifically covered by said guides." [Emphasis mine.]

**4.** The terms of 85 O.S.Supp.1987, Ch. 4, App., Rule 20(i), Rules of the Workers' Compensation Court, provide:

"Expert medical or rehabilitation testimony may be offered by:

\* \* \* \* \* \*

(i) Any other detailed factors upon which the physician's evaluation of permanent impairment is based, including a statement that the evaluation is in substantial accordance with the

latest 'Guides to the Evaluation of Permanent Impairment' adopted and published by the American Medical Association which were in effect when the examination was made. 85 O.S.Supp.1986 § 3(11)."

**5.** See *Great Northern L. Ins. Co. v. Farmers' Union Co-op. G. Co.*, 181 Okl. 370, 73 P.2d 1155, 1158 [1937], in which the court said that "where there is a mere insufficiency of evidence to sustain the verdict in a law action ... a new trial should be granted," and *Seymour v. Swart*, Okl., 695 P.2d 509, 512–513 [1985]. In *Swart* we noted that a judgment which is reversed and remanded for a new trial returns the action to the trial court where it stands as if no trial had been held, except for questions of law settled in the former appeal. See also *Annin v. Belridge Oil Employees Federal Credit Union*, 119 Cal. App.2d Supp. 900, 260 P.2d 295, 302 [1953] where the court stated: "When we say that the evidence is insufficient to justify the decision, we mean that there is an absence of evidence or that the evidence received is *lacking in probative force* to establish the proposition of fact to which it is addressed." [Emphasis added.]

**6.** In *Rodriquez v. Utilities Engineering & Construction*, Okl., 281 P.2d 946 [1955] (syllabus), the claimant, "without fault or in fault reasonably excusable" was prevented from having a full and complete hearing before the trial judge. We held the claimant was entitled to a rehearing of her claim. In *Carpenter v. Douglas Aircraft Company*, Okl., 420 P.2d 911, 913–914 [1966], there was an inadvertent omission of a link in the claimant's chain of proof. The order

is then vacated and the proceeding remanded to the trial tribunal as though the case had never been tried and decided before.[7] Fundamental fairness in litigation process cannot be afforded except within such a framework of orderly procedure—even in compensation cases.[8]

## II

### THE EMPLOYER'S EVIDENCE, THOUGH COMPETENT, WAS WITHOUT PROBATIVE VALUE

A medical report may be "competent" in the sense that it was correctly admitted and yet lack the requisite quality of legally sufficient proof. An "incompetent" report is typically one which is admitted over objection to its hearsay character, where, for example, no cross-examination had been afforded by means of a deposition.

In this case the employer's report is "competent" in the sense that it was *rightly admitted;* the problem is that it proves nothing. The medical evidence—read together with the hospital discharge report which says that *two* discs were operated on—demonstrates the physician's unexplained noncompliance with the AMA standards that allow a 5% disability rating for each disc. Since the employer's medical report gave the claimant an unexplained disability rating of *5%* instead of 10% for both discs, it is not probative of *any* compensable impairment.[9]

## III

### THE *PERLINGER* "JACKPOT" RULE

In *Perlinger, supra,* the court announced the "jackpot rule" by which the claimant is awarded a windfall whenever

the employer's medical report is found to be fatally flawed. An example of the rule's application is afforded by a claimant's report indicating 90% disability and the employer's *flawed report* evaluating disability at 0% without conforming to the AMA Guides. By *Perlinger* teachings this court would be required to order the trial tribunal to enter a 90% disability award. Under this rule, a denial of compensation would be mandated if the claimant's report were found to be fatally defective.

I cannot countenance today's broad application of *Perlinger;* it would encourage gamesmanship by calculated silence of counsel confronted at a trial tribunal's hearing with an opponent's flawed report. Claimants and employers alike could easily be ambushed into visiting a windfall on their opponents astute enough to stand mute at the admission of a report lacking in probative value.

I would narrow the teaching of *Perlinger* by limiting its application to scenarios in which counsel offers a flawed medical report *and* then stands on it after its lack of probative value has been determined by an adverse ruling of the trial judge. I would also require that, in order to afford the adversely affected litigant full opportunity to procure a probative report of disability that replaces the flawed one, a judicial ruling be made before any order or award is entered. Counsel for the party preferring rejected evidence should be given additional time to cure the defect with a replacement report.

Although the record indicates that the five-percent disability rating was challenged below, there was here no ruling and no showing of counsel's conscious recogni-

---

denying compensation was vacated and the case remanded to afford the disadvantaged party the opportunity to elicit evidence that might cure the oversight. In *Glaspey v. Dickerson,* Okl., 350 P.2d 939, 943 [1960], after inadmissible evidence was excluded, the medical evidence that remained was found insufficient to sustain the award. The award was vacated without prejudice to further proceedings below. In *Lincoln Rock Corp. v. Voyles,* Okl., 590 P.2d 186, 189 [1979], the review panel failed to make a finding on newly-discovered and uncontroverted ev-

idence. The case was remanded to the trial judge for further proceedings.

7.  *Adams v. City of Anadarko,* 198 Okl. 484, 180 P.2d 159, 160 [1947].

8.  *Pryse Monument Co. v. District Court, Etc.,* Okl., 595 P.2d 435, 438 [1979].

9.  The phrase "not probative of compensable injury" means here that the report does not follow AMA Guides.

tion of the report's defect or his intention to stand on the flawed evidence.

I would hence declare the employer's medical report ineffective and rule that the worker's disability should be redetermined on the claim's remand.