2009 OK CIV APP 95

**Mitch W. HOWARD, Petitioner,**

**v.**

**ACI DISTRIBUTION SOUTH, Travelers Indemnity Company of America and The Workers' Compensation Court, Respondents.**

**No. 105,496.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Nov. 12, 2009.

---

1. Based on this result, West's request for attorney fees and costs is denied.

Jack Zurawik, Tulsa, OK, for Petitioner.

David P. Reid, Perrine, McGivern, Redemann, Reid, Berry & Taylor, P.L.L.C., Tulsa, OK, for Respondents.

JOHN F. FISCHER, Judge.

¶ 1 Claimant Mitch Howard seeks review of a Workers' Compensation Court three-

judge panel order that affirmed the trial court's order denying his request for medical treatment to his left shoulder. Based on our review of the record on appeal and applicable law, we vacate the order appealed and remand the case for further proceedings consistent with this Opinion.

## BACKGROUND

¶ 2 Claimant worked as a utility driver for Employer ACI Distribution South. He sustained a work-related injury on July 21, 2004, when, while working with a trainee to load an 8′ × 10′ piece of glass onto a truck, he attempted to keep the glass from dropping and breaking after the trainee lost his grip. Claimant continued to work for Employer until August 2004, approximately two or three weeks after his accident. He then went to work for City Glass Company, where he drove a truck and performed "light installation" that included lifting up to forty pounds. Claimant filed his Form 3 on September 1, 2004, alleging that he had sustained injury to his neck, back, shoulders and "the whole left side of his body" as a result of his July 21, 2004 injury. Employer admitted that Claimant sustained injury to his neck and back but denied the remaining alleged injuries. This appeal only concerns Claimant's shoulder injury claim.

¶ 3 On March 21, 2005, the trial court appointed Dr. Thomas as an independent medical examiner (IME) to evaluate Claimant and provide his opinion regarding (1) whether Claimant was temporarily totally disabled as a result of injury to his neck, left shoulder, low back and middle back; (2) whether Claimant had reached maximum medical improvement (MMI) or was in need of additional medical treatment; and (3) the recommended treatment, if any. Dr. Thomas provided his opinion and was subsequently deposed. It was the opinion of Dr. Thomas that Claimant suffered from "cervical degenerative disk disease with cervical and left shoulder pain" but was not temporarily total-ly disabled. Dr. Thomas found that Claimant sustained "an acute injury in [*sic*] top of chronic degeneration of his cervical spine creating aggravation in not only the posterior neck, but into the left shoulder." He recommended "therapeutic epidural steroid injection into the C–6 interspace of the cervical spine" followed by a course of physical therapy. This diagnosis was based on Dr. Thomas's determination that Claimant's "main complaint" was his cervical spine and that his left shoulder complaints and "intrascapular pain" were "most likely generated from his cervical spine."

¶ 4 On March 8, 2006, the trial court appointed Dr. Bradford Boone as IME to provide his opinion on the causation of Claimant's left shoulder complaints, to refer Claimant for additional testing if necessary, and to determine whether Claimant was in need of additional medical treatment for his left shoulder. After he provided his written report, Dr. Boone was also deposed by the parties. Dr. Boone testified:

> I think [Claimant is] nonphysiologic and a lot of his complaints don't make any sense. I think he does have a shoulder problem, it's more degenerative in nature. He's got a little bone spur osteophyte on the undersurface of his AC joint, which is why his shoulder is sore, but it's hard to relate that to his work scenario.

Further, Dr. Boone stated that "most impingements are not traumatic in nature and are degenerative and age-related." However, Dr. Boone acknowledged that Claimant's shoulder "needs to be worked up further," to be certain that his shoulder injury was not work related. Nonetheless, Dr. Boone did not refer Claimant for further medical testing and evaluation.[1]

¶ 5 Claimant filed a Form 9 seeking authorization for medical treatment in the form of diagnostic testing for his left shoulder and referral to an orthopedic surgeon. The matter was set for trial on March 5, 2007. At the trial, Claimant testified that he first

---

1. The order appointing Dr. Bradford Boone as an IME authorized him to "refer [Claimant] to Dr. Tyler Boone for evaluation of neck and back if necessary, or for diagnostics." The record indicates that the two doctors are brothers. The order further authorized Dr. Bradford Boone to perform "diagnostic testing that is reasonable and necessary to respond to the issues specified in this order."

sought treatment for his injuries on July 27, 2004, six days after his accident. His initial treatment records admitted as history indicate a diagnosis of lumbar strain but also note that he complained of pain running from the lumbar area into the left shoulder and neck. Claimant also testified regarding an August 2001 work-related injury to his left shoulder, neck and back before being employed by ACI, but stated that he had recovered from that injury. In addition to the medical evidence from IMEs Thomas and Boone, the trial court also admitted conflicting medical reports from Claimant's expert Dr. Hastings and Employer's expert Dr. Hallford.

¶6 On March 8, 2007, after both parties rested and the trial was concluded, the trial court entered the following order:

> THAT on or about JULY 21, 2004, claimant was employed by [ACI Distributing] and such employment was subject to and covered by the provisions of the Workers' Compensation Act of the State of Oklahoma; and on said date claimant sustained accidental personal injury to the NECK, LEFT SHOULDER, and BACK arising out of and in the course of claimant's employment.

In this order, the trial court also directed Employer to furnish Claimant with an independent medical examination of his left shoulder with Dr. Dukes. The trial court reserved Claimant's request for additional medical treatment for future hearing.

¶7 The trial court entered a separate order on March 12, 2007, appointing Dr. Dukes as an IME and directing him to provide his opinion regarding the causation of Claimant's left shoulder complaints and whether they were work related. The trial court also requested Dr. Dukes, if he found the complaints to be work related, to determine whether Claimant was in need of additional medical treatment to his left shoulder and to make specific recommendations regarding any treatment.

¶8 IME Dr. Dukes examined Claimant on May 3, 2007, and determined that his shoulder had been injured, and that Claimant's symptoms were probably the result of a "lifting-type injury ... consistent with a work injury." He advised the trial court that he was unable to state an opinion regarding Claimant's need for additional medical treatment without further diagnostic treatment, specifically an MRI arthrogram. Dr. Dukes re-examined Claimant following the MRI and stated that in his opinion Claimant "has a left shoulder rotator cuff tendinitis and acromioclavicular [AC] joint arthropathy," requiring treatment in the form of "a left shoulder arthroscopy with subacromial decompression and distal clavical excision."

¶9 At a hearing on October 1, 2007, Claimant requested authorization for surgery to his left shoulder by Dr. Dukes and TTD from the date of surgery. Employer denied any need for shoulder treatment related to Claimant's on-the-job injury and argued that his shoulder complaints were the result of pre-existing condition, i.e., the 2001 injury, and intervening injury resulting from age-related degeneration and Claimant's three years of subsequent employment after leaving ACI. The only evidence introduced at the October hearing in addition to that contained in the record of the March 2007 trial was (1) The report of Claimant's expert Dr. Hastings dated June 2007, wherein he again concluded that the work-related incident on July 21, 2004, was the major cause of Claimant's shoulder injury and that Claimant needed further evaluation and medical treatment, including the surgery recommended by Dr. Dukes; (2) the two reports from IME Dr. Dukes previously discussed, and, (3) the deposition of Dr. Dukes. In his deposition, Dr. Dukes confirmed the findings of injury stated in his post MRI report, testified that the injury was consistent with the work-related injury described by Claimant, and, stated his medical opinion that this July 21, 2004, injury accounted for at least part of Claimant's current shoulder complaints. The trial court advised the parties that it would consider the new evidence as well as the record made at the March 2007 trial.

¶10 On October 4, 2007, the trial court entered a one-page order denying Claimant's request for surgery to his left shoulder by Dr. Dukes. Paragraph one of the order, the only substantive paragraph, states:

THAT claimant's request for surgery to his LEFT SHOULDER with Dr. Dukes is denied as it is not as a result of claimant's JULY 21, 2004 injury.

Claimant appealed to a three-judge panel, which affirmed the trial court's order without modification, after finding it to be neither contrary to law nor against the clear weight of the evidence. Claimant now seeks review in this Court.

## STANDARD OF REVIEW

 ¶ 11 Issues of causation and need regarding requested medical treatment are questions of fact for the Workers' Compensation Court. *Berg v. Parker Drilling Co.,* 2004 OK 72, ¶¶ 12–13, 98 P.3d 1099, 1101. On review, this Court must sustain an order of the Workers' Compensation Court if it is supported by any competent evidence. *Id.* at ¶ 13, 98 P.3d at 1099. *See also Parks v. Norman Mun. Hosp.,* 1984 OK 53, ¶ 12, 684 P.2d 548, 552 (holding that "[a]ll findings of fact made in the trial tribunal's decision under review are conclusive and binding unless they have been ascertained to lack support in competent evidence."). Appellate review of the Workers' Compensation Court's legal rulings is de novo. *Conaghan v. Riverfield Country Day Sch.,* 2007 OK 60, ¶ 7, 163 P.3d 557, 560 ("review of the workers' compensation court's legal rulings is plenary, independent and non-deferential").

## ANALYSIS

[4] ¶ 12 The dispositive issues in this appeal concern the legal rulings by the trial court on Claimant's objections to Employer's expert medical evidence. Absent a more specific statute or rule, the Oklahoma Evidence Code applies to proceedings in the Workers' Compensation Court. *Scruggs v.*

*Edwards,* 2007 OK 6, ¶ 14, 154 P.3d 1257, 1263. The Evidence Code was "intended as a complete code on the admissibility of evidence." 2 L. Whinery, *Oklahoma Evidence, Commentary on the Law of Evidence,* § 2.12, 31 (1994). The fundamental principle on admissibility is set out in section 2402 of the Code: "All relevant evidence is admissible. . . . Evidence which is not relevant is not admissible." 12 O.S.2001 § 2402.

¶ 13 Article VI of the Evidence Code defines which witnesses are competent to testify regarding relevant evidence: "Every person is competent to be a witness except as otherwise provided in this Code." 12 O.S.2001 § 2601. In this case, we consider evidence from a class of witnesses who are qualified as experts by "knowledge, skill, experience, training or education" to testify as to their opinions regarding a fact in issue. 12 O.S. 2001 § 2702.[2]

¶ 14 The evaluation of expert opinion evidence involves four considerations. First, is the witness "qualified as an expert by knowledge, skill, experience, training or education." 12 O.S.2001 § 2702. Second, will the expert's opinion "assist the trier of fact to understand the evidence or determine a fact in issue," that is, is it relevant. *Id.* Third, even if relevant, should the expert's opinion be excluded on "hearsay or other legal grounds." *Scruggs,* 2007 OK 6 at ¶ 15, 154 P.3d at 1263. Fourth, does the expert's opinion pass the test announced in *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 592, 113 S.Ct. 2786, 2796, 125 L.Ed.2d 469 (1993), the purpose of which is to determine "whether the reasoning or methodology underlying the testimony is valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Scruggs,* 2007 OK 6 at ¶ 11, 154 P.3d at 1262.[3]

---

2. With one exception, witnesses who are not qualified as experts are only competent to testify regarding those matters about which they have personal knowledge. 12 O.S. Supp.2002 § 2602. The exception is provided in § 2701 of the Evidence Code permitting a lay witness to testify to an opinion that is rationally based on the witness's perception, helpful to an understanding of the witness's testimony or the determination of a fact in issue and not based on scientific, technical or specialized knowledge.

3. In 2005, 85 O.S. Supp.2005 § 17(A)(1) was amended to provide that claims for permanent disability must be supported by "objective medical evidence," and that the admissibility of expert opinions in Workers' Compensation Court proceedings is to be determined pursuant to "the criteria of Federal Rule of Evidence 702 and all U.S. Supreme Court case law applicable thereto." 85 O.S. Supp.2005 § 3(17). The version of Federal Rule 702 referred to in section 3(17) is the 2000 version amended in response to United

¶ 15 The *Daubert* Court abandoned the "general acceptance" test announced in *Frye v. United States,* 54 App. D.C. 46, 293 F. 1013, 1014 (1923), and previously used in the federal courts for 70 years to evaluate the admissibility of scientific evidence.[4] In its place, the Supreme Court developed a four-pronged but flexible test to determine "the scientific validity and thus the evidentiary relevance and reliability-of the principles that underlie a proposed submission ... The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." [5] *Daubert,* 509 U.S. at 595, 113 S.Ct. at 2797, 125 L.Ed.2d 469.

¶ 16 Once properly admitted, expert witnesses can have different opinions with varying degrees of persuasive effect. *Conaghan,* 2007 OK 60 at ¶ 17, 163 P.3d at 563. "The fact that physicians could have admissible opinions with varying probative value prior to *Daubert* has not been changed by applying *Daubert* to proceedings in the Workers' Compensation Court." *Scruggs,* 2007 OK 6 at ¶ 21, 154 P.3d at 1265. Cross-examination and presentation of contrary evidence "are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596, 113 S.Ct. at 2798. However, an appellate court is not concerned with determining the credibility of competing experts' opinions, the existence of any competent evidence is the relevant inquiry in appeals from the Workers' Compensation Court. *Parks,* 1984 OK 53 at ¶ 12, 684 P.2d at 552.

## I. The Legal Basis for Claimant's Objections

¶ 17 During the March 2007 trial, Claimant's attorney did not challenge the qualifi-

cations of Dr. Boone or Dr. Hallford. Consequently, they were qualified to present opinion evidence in this case. Claimant's objections were to the substance of these witnesses' evidence and were framed in the alternative. Claimant first objected to the competency of the expert evidence and if that objection was overruled, Claimant objected to its probative value.

¶ 18 Historically, in proceedings in the workers' compensation court, a "competency" objection was "directed to the exhibit's admissibility on hearsay or other legal grounds." *Lacy v. Schlumberger Well Serv.,* 1992 OK 54, ¶ 6, 839 P.2d 157, 159. A "probative value" objection was "used to challenge the evidence for insufficiency as legal proof of (a) medical findings with respect to the presence or absence of compensable disability, or of (b) the compensable impairment's rating." *Id.* "Thus, an objection to the 'competence' of medical evidence has a separate and distinct meaning from a probative value objection." *Id.* at ¶ 6, 839 P.2d at 160. However, "competency" as it relates to admissibility has a different meaning than "competent evidence" required to support a decision of the Workers' Compensation Court. *Parks,* 1984 OK 53 at ¶ 12, 684 P.2d at 552. " '[C]ompetency' when used as an objection refers to the evidence's legal admissibility ... the term 'competent' as used in the *Parks* test refers to the legal sufficiency, on any ground of evidence which supports an order of the Workers' Compensation Court." *Lacy,* 1992 OK 54 at ¶ 7, 839 P.2d at 160.[6] "Competent evidence is that which is relevant and material to the issue to be determined." *In re Death of Gray,* 2004 OK 63, ¶ 19, 100 P.3d 691, 696.[7] In other words,

States Supreme Court decisions in *Daubert* and *Kumho Tire Co., Ltd. v. Patrick Carmichael et al.,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). "*Daubert* and *Kumho* are thus applicable to amended § 3(17)." *Scruggs,* 2007 OK 6 at ¶ 10, 154 P.3d at 1262.

**4.** *Kumho* extended the *Daubert* test to any non-scientific area of special knowledge, skill, experience, training or education.

**5.** Briefly stated, those factors are: (1) has the methodology been tested, (2) has it been subject to peer review, (3) is there a known or potential

error rate, and (4) how is it regarded by other experts in field. *Daubert,* 509 U.S. at 593–95, 113 S.Ct. at 2796–97.

**6.** "[L]oose usage of the term 'competence' and its derivatives" may confuse the often similar but nonetheless proper analysis applicable to these separate concepts. *Lacy,* 1992 OK 54 at ¶ 5, 839 P.2d at 159.

**7.** The relevance or competence in the Workers' Compensation Court sense of an expert's opinion may be challenged in two ways. First, the opposing party may object to the legal sufficiency of

competent evidence is that which is probative of some element of the case. Consequently, the analysis of Claimant's competency and probative value objections invokes different evidentiary rules.[8]

### A. The Applicable Law

¶ 19 Although Claimant's shoulder injury occurred in 2004, the sole issue decided in *Scruggs* requires that we resolve Claimant's evidentiary objections based on the amendments to the Workers' Compensation Code enacted in 2005. *Scruggs*, 2007 OK 6 at ¶ 22, 154 P.3d at 1265 (concluding that retroactive application of 85 O.S. Supp.2005 §§ 3(17) and 17(A)(1) was proper because "[these] amendments made no substantive change in the law.")[9]

### B. Dr. Hallford's Evidence

¶ 20 Claimant's competency and probative value objections to the February 2005 and February 2006 medical reports authored by

Dr. Hallford were based on the assertion that his 2006 report did not mention the shoulder or address whether Claimant "needs treatment on the shoulder." Claimant's objections were overruled and these reports were admitted.

■ ¶ 21 We view Claimant's competency objection as based on relevance, arguing that Dr. Hallford's failure to address the cause of Claimant's shoulder injury, the essential issue in the case, renders the reports incapable of making a fact in issue more or less probable. However, Claimant's objection regarding omissions in the patient history contained in Dr. Hallford's reports is unsupported by the record. In both reports, Dr. Hallford discusses Claimant's shoulder complaints. In the 2005 report, he concludes those complaints "date back to" Claimant's 2001 injury and recommends that any claim for additional treatment to the shoulder be pursued through the prior claim. The 2006 report

---

the expert's opinion arguing "the evidence offered is [not] probative of the elements the evidence seeks to establish." *Scruggs*, 2007 OK 6 at ¶ 15, 154 P.3d at 1264. Second, even without a proper objection, incompetent but improperly admitted expert evidence may be reviewed on appeal to determine if "there is a vacuity of proof necessary to support an award." *Hammons v. Oklahoma Fixture Co.*, 2003 OK 7, n. 15, 64 P.3d 1108 n. 15. Expert evidence may be incompetent in the sense that it lacks any probative value for various reasons. It may fail to account for a critical fact necessary to support the trial court's decision. *Id.* at ¶ 6, 64 P.3d at 1110. It may be "too indefinite for a probative medical assessment of causation." *Zebco v. Houston*, 1990 OK 113, ¶ 9, 800 P.2d 245, 247. And, "evidence which is not in substantial compliance with [Workers' Compensation Court] Rule 20 is not competent evidence upon which the trial court may base its conclusion." *Lacy*, 1992 OK 54 at ¶ 11, 839 P.2d at 161.

8. "A *Daubert* objection is similar to the well-known competency objection in the Workers' Compensation Court in that both objections determine the admissibility of evidence. A *Daubert* objection is also similar to the well-known probative-value objection in that both involve an inquiry whether the evidence offered is probative of the elements the evidence seeks to establish." As the *Scruggs* Court explained in footnote 12, the probative value analysis necessary to determine admissibility in the *Daubert* sense concerns "whether an expert's testimony possesses the quality of having the effect of proof, which in turn is based upon whether the expert's reason-

ing or methodology underlying the testimony is valid...." Consequently, depending on the basis for the objection, a competency and a probative value objection may raise the same issue. For example, lie detector evidence from an expert test administrator although clearly probative of facts in issue is nonetheless inadmissible because the reliability of the test has not been scientifically established. *Paxton v. State*, 1993 OK CR 59, ¶ 42, and n. 3, 867 P.2d 1309, 1323 and n. 3. That type of evidence in a civil case is distinguishable from expert evidence that "fails to contain a critical element" and therefore constitutes no proof in the case. *City of Norman v. Garza*, 2003 OK 111, ¶ 14, 83 P.3d 851, 855. *Daubert* excludes the former because although probative the reliability of the methodology has not been sufficiently established. However, both *Daubert* and § 2402 exclude the latter because an expert opinion that fails to consider an essential element has no probative value and, therefore, is not relevant to the issues in the case.

9. That observation is particularly applicable in this case because the year before Claimant's alleged injury the Oklahoma Supreme Court's decision in *Christian v. Gray*, 2003 OK 10, 65 P.3d 591, adopted the *Daubert/Kumho* test for application in Oklahoma courts and no contrary rule or statute applied to the Workers' Compensation Court. In *Scruggs*, the *Daubert/Kumho* standard was applicable because the case would be tried after the 2005 amendments became effective, even though the claimant had been injured prior to the effective date of the amendments. *Scruggs*, 2007 OK 6 at ¶ 13, 154 P.3d at 1263.

notes the previous history regarding the 2001 injury, and finds "no additional permanent impairment of any kind" to Claimant's left shoulder.

¶ 22 Claimant's probative value objection to Dr. Hallford's reports is based on the same argument. Regarding the weight of evidence supporting a decision of the Workers' Compensation Court, review on appeal is limited to the search for any competent evidence to support that decision. The existence of any competent evidence requires affirmance of the Workers' Compensation Court's decision. Only an argument that there is absolutely no evidence to support the decision raises the possibility that the decision may be reversed or modified. *Parks,* 1984 OK 53 at ¶ 9, 684 P.2d at 551. Dr. Hallford's reports were properly admitted, and they contain some evidence to support denial of Claimant's request for medical treatment. Consequently, the trial court did not err in also overruling Claimant's probative value objection to Dr. Hallford's reports.

### C. Dr. Boone's Evidence

¶ 23 Claimant asserted three specific objections regarding the evidence provided by Dr. Boone: (1) Dr. Boone's opinion was based on inaccurate factual history;[10] (2) Dr. Boone's opinion that Claimant's shoulder injury was not caused by the July 2004 incident was not based objective medical findings; and (3) Dr. Boone was biased. In specific support of the last two objections, Claimant relied on two facts: (1) Dr. Boone did not refer Claimant for any additional evaluation despite testifying that he could not be certain that Claimant's shoulder injury was not work-related without additional tests; and (2) Dr. Boone's testimony that Claimant was a "spook," and a "[f]ull of crap kind of guy." The trial judge did not rule on the admissibility of Dr. Boone's evidence, stating that she had not read Dr. Boone's deposition but "if I agree with what you say, I'm not sure that that doesn't make it incompetent. But I will consider it as a probative value objection."

¶ 24 First, Dr. Boone's admitted failure to order the necessary tests to rule out the possibility that Claimant's shoulder injury did in fact result from the July 2004 incident may constitute the kind of omission of a critical medical finding necessary for Dr. Boone's opinion to constitute objective medical evidence. Claimant's brief cites *LaBarge v. Zebco,* 1988 OK 147, 769 P.2d 125, which held that a physician's report that failed to meet the requirements of Rule 20 specifying ten issues that must be addressed in a medical expert's report constituted "no evidence" supporting the employer's defense.[11] *LaBarge,* 1988 OK 147 at ¶ 8, 769 P.2d at 128. *LaBarge* is typical of a line of cases concerned with the adequacy of the evidence in the record supporting a decision of the Workers' Compensation Court. *See Garza,* 2003 OK 111, 83 P.3d 851 (remanding an award as not based on competent evidence because the expert's report omitted a critical medical fact—the discovery of a non-work-

---

**10.** Dr. Boone testified that in his opinion Claimant's shoulder injury did not result from the July 21, 2004 incident because Claimant did not complain about shoulder pain until 14 days or more after that date, very unlikely in Dr. Boone's view for an injury immediately perceivable. As Claimant correctly notes, the record establishes that he complained of shoulder pain when he first attended physical therapy six days after the incident. The fact that Dr. Boone's medical history in this regard is inaccurate and contrary to the record, however, does not establish its inadmissibility. Dr. Boone may well have reached the same conclusion based on a six-day delay in Claimant's report of his shoulder injury. Dr. Boone's mistake in Claimant's medical history is only that, a mistake. It may affect the credibility of Dr. Boone's opinion but it does not preclude the admission of that opinion. "[P]hysicians [can] have admissible opinions with varying pro-

bative value." *Conaghan,* 2007 OK 60 at ¶ 17, 163 P.3d at 563. Further, it is the duty of "the cross-examiner either to elicit from the witness the failure to assume a fact conceded to be material or to show that the omitted fact is indeed indispensable so that its omission from the range of facts to be assumed is fatal to the probative value of the expert's opinion." *Bostick Tank Truck Serv. v. Nix,* 1988 OK 128, ¶ 9, 764 P.2d 1344, 1348. Claimant's first objection to Dr. Boone's evidence does not raise a legal issue, it is only a challenge to the evidentiary quality of Dr. Boone's opinion. This argument may be raised on remand.

**11.** The current version of Rule 20 "encourages but does not require the report to include" the factors listed in the Rule. 85 O.S. Supp.2008, ch. 4, app.

related bacterial cause for claimant's gastritis); and *Hammons,* 2003 OK 7, 64 P.3d 1108 (vacating an order based on an expert's report that failed to address any effect of claimant's pre-existing condition contrary to requirements of controlling case law and the Guidelines of the American Medical Association made applicable pursuant to Rule 21 of the Workers' Compensation Court Rules). Consequently, if additional tests were required to confirm Dr. Boone's diagnosis, his report may not constitute competent evidence necessary to support the denial of further medical treatment. *Parks,* 1984 OK 53 at ¶ 12, 684 P.2d at 552. In that circumstance, Dr. Boone's report would not be relevant because it would not tend to make a fact in issue more or less probable. 12 O.S.2001 § 2401. Therefore, it would not be admissible, and Claimant's competency objection should have been sustained before the probative value of the evidence was addressed.[12]

¶ 25 Second, whatever Dr. Boone may have meant by his assessment of Claimant as a "spook," and a "[f]ull of crap kind of guy," this record provides no basis on which to conclude that those assessments result from the scientifically reliable methodology required by *Daubert.* As additional support for his argument that Dr. Boone was biased and, therefore, incapable of providing the independent medical opinion he was appointed by the trial court to provide, Claimant points to Dr. Boone's testimony that additional evaluation of Claimant's spine "wouldn't hurt." However, Dr. Boone testified that, even though he had been authorized by the trial court to do so, he had not referred Claimant to his brother Dr. Tyler Boone for a spine evaluation "because I like my brother." Claimant argues that these "findings" do not constitute objective medical evidence but reflect bias and a personality problem between Dr. Boone and Claimant. "A doctor's opinion must be predicated on a history consisting of a set of facts substantially consistent with those in evidence, failure of which renders the report of no value."

*Gaines v. Sun Refinery and Mktg.,* 1990 OK 33, ¶ 16, 790 P.2d 1073, 1078. If Dr. Boone's "findings" are not "of a type reasonably relied upon by experts in the particular field," Claimant's competency objection should have been sustained on this basis as well. 12 O.S. Supp.2002 § 2703.

¶ 26 Because the trial court failed to rule on Claimant's objection to the admissibility of Dr. Boone's evidence, we are unable to determine whether that evidence is part of the record considered by the trial court. Absent that ruling, this Court cannot determine what evidence may be considered in assessing the existence of any competent evidence to support the order appealed.[13] The trial court is required to rule on such objections "prior to any award being entered or denied." *Lacy,* 1992 OK 54, n. 35, 839 P.2d 157, 164 n. 35; *Gaines,* 1990 OK 33, n. 5, 790 P.2d 1073, 1080 n. 5. Consequently, the "vacuity" of Dr. Boone's evidence and its admissibility must be specifically determined by the trial court on remand. *Hammons,* 2003 OK 7 at n. 15, 64 P.3d 1108 at n. 15.

¶ 27 The importance of these rulings is critical. ACI argues that the order should be affirmed for two reasons. First, ACI argues that there is competent evidence to support a finding that Claimant's shoulder injury resulted from his pre-July 2004 injury while working for another employer. Second, it argues that there is competent evidence to support a finding that any aggravation of the pre-July 2004 injury occurred during Claimant's subsequent term of employment with another employer.

¶ 28 ACI is correct with respect to the first of these arguments. Dr. Hallford's reports provide that evidence. In Dr. Hallford's opinion, Claimant's neck and shoulder complaints "date back to" the 2001 injury. However, only Dr. Boone provides any evidence regarding the second possibility—that Claimant's current complaints result from age-related degeneration possibly aggravated after Claimant left ACI's employment. As Claim-

---

12. "Evidence which is not relevant is not admissible." 12 O.S.2001 § 2402. Even if improperly admitted, Dr. Boone's report may not constitute competent evidence because it lacks any probative value and could not support the trial court's decision. *See Garza,* 2003 OK 111 at ¶ 15, 83 P.3d at 855.

13. *Cf., Davis v. B.F. Goodrich,* 1992 OK 14, n. 2, 826 P.2d 587, 595 n. 2 (Wilson, J., dissenting) ("Any attempt to arrive at a conclusion as to the evidence considered by the trial court would be mere speculation.").

ant correctly argues, the trial court's order does not disclose which of these was the finding of the trial court, and the basis on which Claimant's request for treatment was denied. If the trial court relied on Dr. Boone's evidence, and that evidence should have been excluded, no evidence in this record supports the conclusion that Claimant's current injury resulted from a post-ACI employment injury. "Meaningful review is facilitated by an order from the trial tribunal from which the specific basis for its decision to grant or deny a claim can be determined." *Dunkin v. Instaff Personnel*, 2007 OK 51, ¶15, 164 P.3d 1057, 1061. Fundamentally, the trial court's order lacks the specificity required by *Dunkin*, thus preventing meaningful review by the panel and this Court. For this additional reason, this case must be remanded for further proceedings.

### CONCLUSION

¶29 The order of the Workers' Compensation Court three-judge panel is vacated. This case is remanded to the trial court for further proceedings consistent with this Opinion.

¶30 **VACATED AND REMANDED FOR FURTHER PROCEEDINGS.**

GABBARD, P.J., concurs, and RAPP, J., concurs in result.